**GUNNELL CONSTRUCTION COMPANY, INC., a Delaware Corporation, Appellant,**

v.

**DISTRICT OF COLUMBIA, a Municipal Corporation.**

**No. 76–1046.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 20, 1976.

Decided Jan. 28, 1977.

Herman M. Braude, Washington, D.C., with whom John N. Fenrich, Jr., Washington, D.C., was on the brief, for appellant.

Leo N. Gorman, Asst. Corp. Counsel, District of Columbia, Washington, D.C., with whom John R. Risher, Jr., Corporation Counsel, Louis P. Robbins, Principal Asst. Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, Washington, D.C., were on the brief, for appellee.

Before BAZELON, Chief Judge, and WRIGHT and ROBINSON, Circuit Judges.

Opinion for the court filed by Circuit Judge WRIGHT.

J. SKELLY WRIGHT, Circuit Judge:

Appellant Gunnell Construction Company appeals from a judgment of the District Court which denied its claim for additional compensation under a contract with the District of Columbia. In January 1961 Gunnell and the District entered into an agreement for construction of the Bertie Backus Junior High School in the District. The contract called for Gunnell to drive some 836 piles to various depths. Once work commenced appellant encountered difficulty driving the piles and ultimately incurred $134,969.56 in costs above its estimate, allegedly because subsurface conditions differed in material respects from test borings, supplied by the District, upon which its estimate had been based.

The contract between Gunnell and the District contained a "Disputes" clause [1] requiring Gunnell to submit its claim for ad-

1. *Disputes.*—Except as otherwise specifically provided in this contract, all disputes concerning questions arising under this contract shall be decided by the contracting officer subject to written appeal by the contractor within 30 days to the Contract Appeals Board, whose decision shall be final and conclusive upon the parties thereto, subject to the limitations of Section 3(b)(2) of Reorganization Plan No. 5 of 1952. In the meantime, a contractor shall diligently proceed with the work as directed. Gunnell argues here that the Reorganization Plan referred to above takes jurisdiction from the Contract Appeals Board in this case. The Plan provides in relevant part:

(b) The Board of Commissioners shall not provide for the performance by any member of the Board of Commissioners, or by any other officer, employee, or agency of: * * (2) the function of approving any contract in excess of $50,000 * * *.
1 D.C.Code, Appendix, at 148 (1973). Even if we assume with Gunnell that settlement of a claim in excess of $50,000 is an "approval" of a contract to which this limitation applies, we do not see how this defect in Board jurisdiction would require a trial *de novo* in the District Court. We think the limitation in the "Disputes" clause is for the benefit of the District of Columbia and, if not, that the benefit Gunnell

ditional compensation to a Contracting Officer with a right of appeal to the District of Columbia Contract Appeals Board. This procedure was followed and both the Contracting Officer and the Board rejected appellant's claim. Appellant then sought review of the Board's actions in the District of Columbia Court of Appeals, which dismissed the petition for review on the ground that the District of Columbia Administrative Procedure Act does not apply to the Board. *Gunnell Const. Co. v. Contract Appeals Board,* 282 A.2d 556 (D.C. App.1971). Following the Court of Appeals' statement that review could be had only by an action on the contract, Gunnell filed this suit in the District Court. During pretrial the District moved for entry of an order to the effect that the case should be submitted on the basis of the administrative record created by the Board. This motion was granted over Gunnell's objection. Applying the standard of review of the Wunderlich Act,[2] the District Court entered judgment against appellant.

In this appeal Gunnell does not challenge the District Court's finding that the order of the Contract Appeals Board was supported by substantial evidence. Instead, Gunnell takes the position that it was entitled to a trial *de novo* before the District Court. Three arguments are made in favor of this position: first, that the Wunderlich Act does not apply to the District of Columbia; second, that the composition of the Board was biased, denying it due process of law; and third, that the Board failed to abide by its own regulations in assigning members to the panel that heard Gunnell's claim.

Gunnell first argues that the Wunderlich Act, which by its terms applies only to "contract[s] entered into by the United States," 41 U.S.C. § 321 (1970), does not apply to contracts entered by the District of Columbia, an entity legally distinct from the United States. Because the Act does not apply, appellant concludes, a trial *de novo* is required. We do not agree.

■ The Wunderlich Act was passed to reverse the decision in *United States v. Wunderlich,* 342 U.S. 98, 72 S.Ct. 154, 96 L.Ed. 113 (1951), which held that a decision of a government contract board of appeals was final and unreviewable unless actual fraud could be shown. The Act, which makes such a board's decision final unless fraudulent, arbitrary, capricious, "grossly erroneous," or not supported by substantial evidence, was intended to broaden the common law standard of review of contract appeal board actions. It is therefore immaterial whether the Wunderlich Act applies by its terms to District of Columbia contracts. If it does apply, the District Court was correct in ruling that the case should be decided on the administrative record. If it does not, the applicable law is that of *United States v. Wunderlich, supra,* which would give Gunnell even less judicial review than it has already received, and the trial court's application of the Act would be harmless error. In addition, we agree with the trial court that *District of Columbia v. Heman Ward, Inc.,* 261 A.2d 836, 838 (D.C. App.1970), which holds that the principles of the Wunderlich Act apply to contract disputes to which the District of Columbia is a party, governs this case and bars a trial *de novo.*

Appellant's second and third arguments turn on the composition of the panel of the Contract Appeals Board which decided appellant's case. The Board was established

receives under the limitation is only a right to appeal to the Board of Commissioners (now the Mayor).

2. No provision of any contract entered into by the United States, relating to the finality or conclusiveness of any decision of the head of any department or agency or his duly authorized representative or board in a dispute involving a question arising under such contract, shall be plea⸺ ⸺in any suit now filed or to be filed as limiting judicial review of any such decision to cases where fraud by such official or his said representative or board is alleged: *Provided, however,* That any such decision shall be final and conclusive unless the same is fradulent [*sic*] or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence.

41 U.S.C. § 321 (1970).

under District of Columbia Organization Order No. 9 which provides, in relevant part:

   \* \* \* There is established a Contract Appeals Board, D.C., consisting of one or more active or retired Assistant Corporation Counsel designated by the Corporation Counsel, one of whom shall serve as Chairman of the Board, and two or more persons appointed or designated by the Commissioner [now Mayor of the District of Columbia] from among officers assigned to the Corps of Engineers and detailed to assist the Commissioner \* \* \*, or from among active or retired District of Columbia officers and employees *who have had practical experience in the administration of government contracts*. Except as otherwise provided by its rules, all business of the Board shall be conducted by panels of not less that three members at least one of whom shall be an active or retired Assistant Corporation Counsel member, but any two members of a panel shall constitute a quorum for the transaction of any business of the Board.

D.C.Org. Order No. 9 Part VI, 1 D.C.Code, Appendix, at 235 (1973) (emphasis added). The Board's rules parallel this provision.[3]

In this case a panel consisting of two active Corporation Counsel and one "technical" member[4] was appointed to hear Gunnell's claim. At the hearing only two "law" members were present. However, the Board's rules allow an absent member to participate in the decision of a case so long as that member is familiar with the transcript of the hearing,[5] and counsel for the District concedes that it was not known how many members of the panel would actually decide the case until a decision was rendered, *see* br. for appellee at 16.[6] When the decision was rendered it was signed by only the two "law" members of the panel.

Gunnell argues that a decision rendered by such a "law" quorum is defective in two respects: first, because it deprives Gunnell of a "technical" member in contravention of the purpose of the Organization Order and the Board's own rules; and second, because the quorum of the panel was infected by a serious possibility of bias since both panel members were subordinates of the Corpora-

---

**3.** The Board's rules provide in relevant part:
   RULE 1.2. *Composition of Board—Panels.* (a) The Board is composed of such number of members as may have been appointed or designated to serve on the Board as provided by the charter. The Board functions, however, through panels of not less than three members of whom at least one must be a law member or, to the extent provided in these Rules, through the Chairman or another law member.
36 D.C. Register, Rules & Regulations, Rule 1.2 (1970).

**4.** *I.e.,* a member who by position or express requirement has practical experience in the administration of government contracts. The Board's rules define a "law member" as an Assistant Corporation Counsel. *Id.,* Rule 1.1(h). While it is possible that the law members assigned to Gunnell's panel in fact had experience in contract administration, there is nothing in either Order No. 9 or the Board's rules which would have required this to be the case. The record is silent on this issue. Since the qualifications of the law members and their method of selection are matters within the peculiar knowledge of the District, we think that it had the burden of demonstrating that the members assigned in this case had the requisite experience and, since there is no such showing,

that we must assume that the law members were not so qualified.

**5.** RULE 12.7. *Absence of Member from Hearing.* Any member of the Board who is not present for all or part of a hearing may, nevertheless, participate in the decision of the Board, but he shall read the entire transcript of the hearing, or the portions of the transcript covering the period or periods of his absence from the hearing, and at least those other portions of the record (see Part 14 of these Rules) to which the parties refer at the hearing or in their briefs, together with the briefs and other submissions of the parties.
36 D.C. Register, Rules & Regulations, Rule 12.7 (1970).

**6.** It should be noted that normal Board procedure would be for the hearing to be conducted before a single "law" member of the Board, even though three persons would normally decide the appeal. *See id.,* Rules 1.2, 12.6. For this reason, appellant was not on notice of the defective composition until after a decision was rendered. Thus, contrary to the District Court, *see* JA 20, we hold that appellant's failure to object to the Board's composition during the hearing did not constitute a waiver.

tion Counsel, who is responsible for arguing cases for the District of Columbia before the Board. We need not reach the second issue here since we hold that the composition of the quorum was defective. We note, however, that a decision by a panel whose membership composition was consistent with the Board's rules as we today construe them was upheld against a similar constitutional attack in *Jonal Corp. v. District of Columbia,* 175 U.S.App.D.C. 57, 533 F.2d 1192, *cert. denied,* 429 U.S. 825, 97 S.Ct. 80, 50 L.Ed.2d 88 (1976).[7]

■ The language of Organization Order No. 9 is ambiguous in its implications for the composition of panels and quorums once the Board is at greater than its minimum strength of three members. If, however, the Board were at minimum strength, the Order makes clear that two of the three members would be technical people and the remaining person, the chairman, a lawyer. A Board so composed, of which any quorum would contain at least one technical person, would ensure that knowledge of the law and of industry practice and custom would combine in the decision of every case. That it was the purpose of the Order to create collegial decisionmaking combining such complementary branches of knowledge can be inferred from a number of considerations. Most importantly, the Board has historically been a technical tribunal.[8] For example, in 1961 when Gunnell signed its contract with the District, the Board consisted of four members: one the Corporation Counsel or a designated Assistant, another the Senior Assistant to the Engineer Commissioner or a designated lesser Assistant, and two others drawn from officers or employees of the District "who have had prac-

tical experience in the administration of Government contracts." Reorganization Order No. 29, Part VII(a), 1 D.C.Code, Appendix, at 95 (1961 ed.). Then, as now, panels consisted of three members and quorums of two and, since only one lawyer sat on the Board, it was mathematically impossible to have any decision rendered without the participation of a technical member. By 1967 the composition of the Board's four members changed slightly so that the Corporation Counsel and Senior Assistant to the Engineer Commissioner no longer sat on the Board—instead, this task was assigned to a designated Assistant Corporation Counsel and a designated Assistant to the Engineer Commissioner—and retired as well as active officers or employees of the District became eligible for the two positions for those possessing "practical experience in the administration of Government contracts." Reorganization Order No. 29, Part VII(a), 1 D.C.Code, Appendix, at 117 (1967 ed.). Again, only one lawyer served on the Board. The composition of the Board was modified again in 1967 in Organization Order No. 3. The position formerly reserved for the Engineer Commissioner's designate was reassigned to the Commissioner's designate. *See* Organization Order No. 3, Amendment 1, Part IV(2)(a), *printed in* 14 D.C. Register 132 (Dec. 13, 1967). This change was necessitated by the abolition of the position of Engineer Commissioner in the District of Columbia reorganization of 1967, *see* Reorganization Plan No. 3, Section 401, 1 D.C.Code, Appendix, at 151 (1973), and there is no indication that it was intended to change the type of person who would hold the Board post. Thus throughout this time the only express job qualifica-

---

7. In *Jonal* the decision was made by the full panel, which contained one technical and two law members. *See* 533 F.2d at 1194. The separation of function objection to a deciding panel lacking a technical member, as here, may be stronger since there is no disinterested party in such a panel to provide any leavening force. Whether this difference rises to the level of a constitutional distinction we do not today decide. *See Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 341, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring).

8. The Board is not an independent agency, but is a delegate of the Commissioner (now Mayor) of the District of Columbia, exercising his authority to decide contract disputes. *Gunnell Const. Co. v. Contract Appeals Board,* 282 A.2d 556, 558 (D.C.App.1971). It was established by Reorganization Order No. 29, issued pursuant to Reorganization Plan No. 5 of 1952, 66 Stat. 824. *See* H. Petrowitz, Operation and Effectiveness of Government Boards of Contract Appeals 61 (S.Doc.No.99, 89th Cong., 2d Sess., 1966).

tion for service on the Board was "practical experience in the administration of Government contracts," which suggests that the Board was primarily conceived of as an arbitral tribunal that decided cases in accord with the norms of industry custom and practice. In June 1968 Order No. 3 was itself superseded by Order No. 9 and the present language was adopted.

Comparing the progressive changes in staff composition, it appears that there was a trend throughout the 1960's to downgrade the staff of the Board, which culminated in removal from the Board of the Corporation Counsel and anyone at the Assistant Commissioner level. At the same time it became possible to relieve active employees of service on the Board by substituting retired officers or employees. Finally, in Organization Order No. 9 the Board was re-established so that it could expand from four members to an unlimited number, although as we have already noted the smallest authorized Board still had only a single attorney. This staffing trend suggests that service on the Board was an additional and expanding duty which hindered important District personnel in the performance of their normal jobs and, further, that changes were instituted primarily to relieve a burden on those for whom service on the Board was not a primary responsibility. In view of this and in view of the fact that the "practical experience in the administration of government contracts" standard for service on the Board remained constant throughout this period, it would be unreasonable to conclude that the composition changes were also intended to permit

changes in the fundamental character of the Board as a body with special expertise and experience in contract administration. Since decisions rendered by quorums consisting of two Assistant Corporation Counsel would run a risk of changing this fundamental character, we hold that every quorum and every panel must have at least one technical member.

Considerations other than the historic composition of the Board also support the inference that decisions rendered by two Assistant Corporation Counsel are impermissible. First, boards of contract appeals have historically been of two forms. One of the earliest of such boards, the War Department Board of Contract Adjustment, established in 1918, was composed wholly of lawyers.[9] However, at virtually the same time the Navy's Compensation Board was composed of officers experienced in engineering, management, and accounting.[10] Quasi-judicial boards, as opposed to boards of experts, have since World War II been the rule in the Department of Defense,[11] and the other major federal government board, the GSA Board of Contract Appeals, is also expressly quasi-judicial.[12] On the other hand, the contract appeal in *Wunderlich* itself went directly to the Secretary of the Interior.[13] In light of the long-standing all-attorney composition of the largest federal government boards, we think the composition provisions of Reorganization Order No. 29 and Organization Order No. 9 take on special significance, representing a conscious choice to adopt the minority board-of-experts approach to contract appeals rather than the majority quasi-judicial approach.[14] The fact that a lawyer has al-

9. *See* Shedd, *Disputes and Appeals: The Armed Services Board of Contract Appeals,* 29 Law & Contemp. Prob. 39, 45 (1964).

10. *Id.* at 47.

11. *See id.* at 53, 56. *See also* H. Petrowitz, *supra* note 8, at 41.

12. *See* 41 C.F.R. § 5A–60.101 (¶ 2(2)) (1976).

13. *See United States v. Wunderlich,* 342 U.S. 98, 99, 72 S.Ct. 154, 96 L.Ed. 113 (1951). The practice of using non-lawyers to decide appeals is followed in other federal agencies. *See, e.g.,*

H. Petrowitz, *supra* note 8, at 39 (Commodity Credit Corporation), 53 (Department of Commerce). Selection of non-lawyers is apparently based on their expertise in contracting or in the subject matter of a contract dispute. *See id.* at 36 (Department of Agriculture); *id.* at 46–47 (Atomic Energy Commission); *id.* at 53 (Department of Commerce).

14. Of the 17 Boards studied by Petrowitz, which included the District Board, only four (including the District) had a majority of members who were non-lawyers. Six were composed completely of lawyers and a number of others required all members to have legal skills

ways been the chairman of the Board does not detract significantly from this conclusion since a lawyer's presence on the Board has always been required simply to administer the mechanics of the hearing process, whether or not there was any intention to bring legal skills and concepts to bear on the ultimate resolution of disputes.[15] Indeed, the Board's rules emphasize the chairman's role as an administrator. The chairman, for example, is ordinarily the only member at a hearing,[16] administers rules of evidence,[17] and is the only Board member who can authorize subpoenas.[18] For all of these functions knowledge of the law is an obvious and important job qualification.[19]

Finally, if the language of Organization Order No. 9 were construed to allow panels and quorums composed solely of lawyers, the purpose of requiring at least some members to have practical experience in contract administration would be subverted since there would be no guarantee that this experience would be brought to bear on any decision. To be sure, even under our holding today a panel of two lawyers and one technical member could always reach a decision with the lawyers outvoting the technical member. This observation does not, however, make a rule requiring participation by a technical member meaningless.

In collegial decisionmaking there will always be winners and losers; if the technical member is not persuasive in individual cases, that is of little moment. What is important under a theory of collegial decisionmaking is that a person with knowledge of the customs of government contracting participate actively, even if in dissent, in the process by which a case is decided.[20]

■ Having decided that the composition of the quorum that decided Gunnell's case was improper, we must set aside the affirmance of the Board's order by the District Court. This disposition does not mean, however, that Gunnell should receive a trial *de novo* in the District Court. We see nothing improper in the Board's rule that a member can decide a case so long as he is familiar with the transcript of the hearing before the Board.[21] Since there is no allegation that the evidence taken at the hearing before the Board was in any way skewed by the composition of the hearing panel, we see no reason for taking any further evidence. All we require today is that a panel and quorum of the Contract Appeals Board, each of which has at least one technical member, review the hearing transcript and re-decide Gunnell's claim in accordance with the collegial decisionmaking principles which govern the Board. The

if not formal legal training. See H. Petrowitz, *supra* note 8, at 122 (note that the Coast Guard Board, listed as having one lawyer in the table on this page, is said on page 50 to have two lawyer members). The composition established for the District Board by Reorganization Order No. 29 is therefore clearly in the minority and for this reason seems especially likely to represent a conscious choice to eschew the all-lawyer "adjudicatory" model of an appeals board.

15. Of course, as we have already said, it would make sense for decisions to be rendered by bodies sharing legal and technical skills.

16. *See* 36 D.C. Register, Rules & Regulations, Rule 12.6 (1970).

17. *See* 36 D.C. Register, Rules & Regulations, Rules 9.1–9.5 (1970). In keeping with the non-legal character of the Board, the rules of evidence are less stringent than those employed in a court of law. The standard for admissibility, for example, is that evidence must be "of the kind which would affect reasonable and fair-

minded men in the conduct of their daily affairs." *Id.*, Rule 9.1.

18. *See* D.C.Org. Order No. 9, Part VI(E), 1 D.C.Code, Appendix, at 236 (1973); 1 D.C.Code § 237 (1973). The chairman of the Board must sign all subpoenas. 36 D.C. Register, Rules & Regulations, Rule 11.1 (1970).

19. The chairman's functions may be further delegated by the chairman, but only to an Assistant Corporation Counsel. *See* 36 D.C. Register, Rules & Regulations, Rules 1.1(h), 1.3 (1970).

20. We do not reach the issue of whether Gunnell, which signed its agreement in 1961 when Reorganization Order No. 29 was in effect, has a contractual right to have its claim decided by a panel and quorum constituted as the Board would have been in 1961.

21. *See* note 5 *supra.*

Board is, of course, free to hold new hearings should it so desire.

For the above reasons, this case is remanded to the District Court with directions to suspend further proceedings for a reasonable period of time to allow the Contract Appeals Board to review the evidence in this case. At the end of such time, if the Board has not rendered a new decision, appellant should be granted a trial *de novo.*[22]

*So ordered.*

---

**22.** The relief we grant today reflects the fact that this is essentially an action on a contract and not an action for review of an administrative agency. *See Gunnell Const. Co. v. Contract Appeals Board,* 282 A.2d 556 (D.C.App. 1971). We further recognize that the Board's failure to follow proper procedures is a breach of contract which gives the District Court the power to adjudicate the contract dispute. Nonetheless, the Wunderlich Act and *District of Columbia v. Heman Ward, Inc.,* 261 A.2d 836 (D.C.App.1970), remind us that courts should not be quick to substitute their judgment on the merits of the dispute for that of the decisionmaking body which the parties have bargained for. Since the procedural flaw in the Board's decision is readily corrected, the proper course is to allow that body to perform its contractual decisionmaking function, reserving trial *de novo* for those rare cases in which the Board cannot or will not perform in accord with its contractual obligations.