**JONES & ARTIS CONSTRUCTION COMPANY, Petitioner,**

v.

**DISTRICT OF COLUMBIA CONTRACT APPEALS BOARD, Respondent.**

No. 87–639.

District of Columbia Court of Appeals.

Argued April 12, 1988.
Decided Oct. 25, 1988.

John William Mannix, Washington, D.C., for petitioner.

Martin B. White, Asst. Corp. Counsel, with whom Frederick D. Cooke, Jr., Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for respondent.

Before FERREN, BELSON and ROGERS, Associate Judges.

FERREN, Associate Judge:

In this government contract case, the District of Columbia Department of Administrative Services (DAS) cancelled an invitation for bids on a contract to haul sludge for the Department of Public Works at the Blue Plains sewage treatment plant. Jones & Artis Construction Company, which had submitted a bid, "appealed" this cancellation to the District of Columbia Contract Appeals Board. The Board dismissed on the ground that Jones & Artis actually had filed a "protest," not an "appeal," and thus had filed too late—after the 10–day statutory period—to invoke the Board's jurisdiction. Jones & Artis seeks review of that dismissal.

We agree with the Board that Jones & Artis filed a "protest," but we cannot affirm on the ground of untimeliness. Rather, we must dismiss for lack of our own jurisdiction. Although the applicable statute *does provide for this court's direct review of a "Board decision," our jurisdiction*

has been limited by Congress, save for exceptions inapplicable here, to review of "contested cases." Because Jones & Artis' protest did not create a contested case before the Board, we must dismiss the appeal. Interestingly, however, had Jones & Artis filed an "appeal" with the Board, as it contends it did, that might have presented a contested case that ultimately was reviewable by this court. Accordingly, in order to resolve our own jurisdiction here, we have had to determine whether an "appeal" or a "protest" to the Board is at issue—a determination that, for all practical purposes, resolves the merits.

## I.

DAS issued an invitation for bids on the Blue Plains contract on April 8, 1986, and accepted bids until 2:00 p.m. on May 13, 1986. When the bids were opened at 2:10 p.m., the official in charge announced that MTI Construction Company was the only bidder. A representative of Jones & Artis was present, however, and immediately said that his company had also submitted a bid. Everyone involved then accompanied the bid-opening official to the safe where all the bids were to have been kept. There the official found a sealed bid from Jones & Artis stamped received at 1:49 p.m. on May 13, 1986. Upon direction of his supervisor, the official opened the bid; he found that Jones & Artis was the apparent low bidder. On May 30, 1986, MTI filed a protest with DAS, alleging Jones & Artis' bid was untimely. DAS transmitted MTI's protest to the Contract Appeals Board, but the record does not reflect the disposition.

In any event, after the bid opening, DAS investigated for several months in an effort to resolve the factual uncertainties surrounding receipt of the Jones & Artis bid. DAS was unable to solve the mystery, however, so on recommendation of the Corporation Counsel the Director of DAS formally issued a "determination" on August 13, 1986, that cancelling the invitation for bids would be "in the best interest of the District Government." Jones & Artis received notice of cancellation on September 10.

Nearly two months later, on November 6, Jones & Artis filed a "Notice of Appeal" with the Contract Appeals Board challenging this cancellation. On November 13, DAS issued a second invitation for bids. On November 24, Jones & Artis filed a protest with the Board against this second invitation but later withdrew it.

On May 26, 1987, the Chairman of the Contract Appeals Board—who was also its only active member—issued an order on behalf of the Board dismissing Jones & Artis' "appeal" of November 6, 1986, for lack of jurisdiction. According to the Chairman, the "appeal" was actually a "protest" within the meaning of the District of Columbia Procurement Practices Act of 1985. D.C.Code §§ 1–1181.1 to 1–1192.6 (1987). Under that statute, a protest must be filed within ten working days from the time the aggrieved person knew or should have known of the circumstances giving rise to the protest. *Id.* § 1–1189.8(b). Consequently, the Chairman concluded, Jones & Artis—which had waited almost two months—did not file a timely challenge.

Jones & Artis has petitioned this court for review, contending, first, that the Contract Appeals Board was improperly constituted and lacked a quorum; that its decision, therefore, had no legal effect; and that of necessity this court must afford *de novo* review of petitioner's grievance. Alternatively, Jones & Artis argues that DAS' cancellation of the original invitation for bids was subject to "appeal," not merely to a "protest," and thus was timely filed with the Board within the required 90 days. *Id.* §§ 1–1189.3(2), –1189.4(a). Before we address these concerns, however, we consider *sua sponte* the issue of our own jurisdiction.

## II.

D.C.Code § 1–1189.5 (1987) provides for the direct appeal of a "Board decision" to this court within 120 days from the date of receipt of the decision.[1] This

---

1. D.C.Code § 1–1189.5 (1987) provides:

(a) A contractor may appeal a Board deci-

court, however, only has jurisdiction to review "an order or decision of the Mayor or an agency in a contested case." *See* D.C. Code §§ 11–722 (establishing jurisdiction over agency action); § 1–1510(a) (limiting review to contested cases) (1987). A "contested case" means a proceeding in which "the legal rights, duties, or privileges of specific parties are required by law (other than [the District of Columbia Administrative Procedure Act (DCAPA)]), or by constitutional right," to be determined after a trial-type hearing. *See id.* §§ 1–1502(8), –1509; *Dupont Circle Citizens Association v. District of Columbia Zoning Commission*, 343 A.2d 296, 298–99 (D.C.1975) (en banc); *Chevy Chase Citizens Association v. District of Columbia Council*, 327 A.2d 310, 313–14 (D.C.1974) (en banc). In addition to this general grant of jurisdiction, Congress itself on occasion has authorized this court to afford direct review of a particular type of agency determination even though there was no contested case. *Hotel Association of Washington, D.C. v. District of Columbia Minimum Wage and Industrial Safety Board*, 318 A.2d 294, 304 (D.C.1974) (en banc). In contrast, however, the Council of the District of Columbia may not enlarge the congressionally prescribed limitations on our jurisdiction, most significantly the "contested case" limitation in the DCAPA. *See* D.C.Code § 1–233(a)(4) (1987) (Council may not adopt any provision "with respect to Title 11 (relating to organization and jurisdiction of the District of Columbia courts)"); *Capitol Hill Restoration Society, Inc. v. Moore*, 410 A.2d 184, 186–88 (D.C.1979). This means that the Council may not confer jurisdiction on this court under D.C.Code § 1–1189.5 to review a Contract Appeals Board decision on an "appeal" or a "protest," *see id.* § 1–1189.3, unless the Board proceeding itself is a contested case.

■■■ We have no difficulty discerning that a contractor's "appeal" of a decision of the Director to the Board may present a contested case involving a trial-type hearing. *See id.* §§ 1–1189.4 ("Contractor's

right of appeal to Board"), –1189.6 ("Oaths, discovery, and subpoena power"); 27 DCMR §§ 200.1—299.1 ("Contract Appeals Board: Hearings and Decisions"). And, we are equally confident that a contractor's "protest" will not result in a contested case. The statute (and certainly the Constitution) does not require a hearing, let alone a trial-type hearing, to resolve a protest, *see* D.C.Code § 1–1189.8 ("Protest of solicitations or awards to Board"). Moreover, the Board currently functioning under the Procurement Practices Act of 1985 (more later about the Board's legal status) has adopted no regulations whatsoever pursuant to statutory authority, *id.* § 1–1189.8(f), that would suggest the Board might use a trial-type hearing to resolve a protest. Instead, under traditional government contract law, protests are decided on the written submissions, coupled on occasion with a "conference," not a formal hearing, attended by interested parties. *See* 4 C.F.R. §§ 21.0—21.12 (1988) ("Bid Protest Regulations"); W. KEYES, GOVERNMENT CONTRACTS IN A NUTSHELL 180 (1979). The 1985 Act appears to follow this model.

■■■ In sum, if Jones & Artis filed an "appeal" with the Board, we may have jurisdiction to review the Board's decision. But, if Jones & Artis filed a "protest," as the Board itself ruled, we do not have jurisdiction, and any relief from the Board's action would have to be sought, in the first instance, from the Superior Court. *See Capitol Hill Restoration Society, Inc.*, 410 A.2d at 188. We, of course, have jurisdiction to determine our own jurisdiction, and thus—like the Board—we must determine whether an "appeal" to the Board or a "protest" is at issue. In this sense our jurisdictional evaluation will entail an exploration, and virtual resolution, of the merits of Jones & Artis' case.

### III.

#### A.

■■■ As government contract law has developed, there are two basic categories

sion to the District of Columbia Court of Appeals within 120 days after the date of receipt of a copy of the decision.

(b) If the Director determines that an appeal should be taken, the Director, with the

prior approval of the Corporation Counsel, may appeal the Board's decision to the District of Columbia Court of Appeals for judicial review within 120 days from the date of the receipt of the Board's decision.

of public procurement disputes: (1) disputes arising in connection with solicitation of bids and awards of particular contracts, and (2) all other disputes, including controversies over contract performance as well as wholly separate proceedings to suspend or debar a particular business from consideration for a contract award. *See, e.g.,* R. NASH, JR. & J. CIBINIC, JR., FEDERAL PROCUREMENT LAW (3d ed. 1980) (*compare* Vol. I (contract formation) *with* Vol. II (contract performance)); G. MONROE, GOVERNMENT CONTRACT LAW MANUAL (1979); W. KEYES, *supra.*

Customarily, complaints about the solicitation and award of contracts are called "protests." [2] Such alleged improprieties must be quickly asserted and expeditiously resolved so that the contract can be awarded and the job begun. Under federal law, for example, there are comprehensive provisions governing the "procurement protest system." 31 U.S.C. §§ 3552–56 (Supp. IV 1986). A complaining party generally must protest to the General Accounting Office within 10 days after the grievance is known or should have been known. 4 C.F.R. § 21.2(2) (1988). The Comptroller General must issue a final decision within 90 working days (and, in certain cases, within 45 calendar days) after the protest is filed. 31 U.S.C. § 3554(a)(1) & (2) (Supp. IV 1986); 4 C.F.R. §§ 21.7, 21.8 (1988).

In contrast, "appeals" are customarily limited to issues of contract performance (or to suspension or debarment of a firm). Under the federal system, for example, there is a separate chapter governing "contract disputes," 41 U.S.C. §§ 601–613 (1982), meaning disputes brought by "contractors" who, by definition, are parties (other than the government) to an awarded contract. *Id.* § 601(4). Such disputes must be submitted initially to the "contracting officer," *id.* § 605, and may be "appealed" to an agency board of contract appeals within 90 calendar days from receipt of the contracting officer's decision. *See id.* §§ 606–607; 48 C.F.R. § 533.7101(a) (1987). They cannot be the subject of a protest.[3]

The American Bar Association Model Procurement Code also reflects the traditional distinction between a protest and an appeal. MODEL PROCUREMENT CODE FOR STATE AND LOCAL GOVERNMENTS §§ 9–101, –101 commentary, –506 (1979). *See also* MODEL PROCUREMENT ORDINANCE FOR LOCAL GOVERNMENTS §§ 9–101 (bid protests), –102 (contract claims) (1982). Unlike the federal system, the Model Code establishes the same forum for resolving both kinds of complaints. The proposed Procurement Appeals Board exercises jurisdiction over "any protest of a solicitation or award of a contract" and over "any appeal from a determination by the Chief Procurement Officer." Model Procurement Code § 9–505. Under the Model Code, however, the Procurement Appeals Board does not have exclusive jurisdiction over protests. Subject to exceptions not relevant here, protests may be lodged either with the Board within a suggested 14 days after the grievance is known or should have been known, *id.* § 9–506(2)(a), or, initially, with a designated procurement official, *id.* § 9–101(1) & (2), subject to a right of appeal to the Board within a suggested seven days of the reviewing official's decision, *id.* § 9–506(2)(b).

---

**2.** Under federal government contract law, "protest" means [1] a written objection by an interested party to a solicitation by a[ ] Federal agency for bids or proposals for a proposed contract for the procurement of property or services or [2] a written objection by an interested party to a proposed award or the award of such a contract....
31 U.S.C. § 3551(1) (Supp.IV 1986). *See generally* 1 R. NASH, JR. & J. CIBINIC, JR., *supra,* at 803–04 (protest is technique to challenge decision by procurement agency in contract award process); G. MONROE, *supra,* at 17–19 (same); W. KEYES, *supra,* at 176–93 ("Complaints by potential bidders under formally advertised contracts ... prior to contract award, are termed protests. Protests are to be distinguished from allegations for breaches of contract.").

**3.** *See Mustang Industrial Cleaners,* Comp.Gen. Dec. B–172531, Mar. 5, 1976, 76–1 CPD ¶ 158 ("Matters of contract administration [such as failure to follow dispute clause, improper withholding of funds, and denial of requests for changes] are not for resolution under our bid protest procedures, which are reserved for considering whether an award, or proposed award, of a contract complies with statutory, regulatory and other legal requirements.").

Like the federal system, the Model Code suggests a much longer filing deadline for "appeals" of other disputes to the Board. A party has 60 days within which to appeal controversies over debarment and suspension, *id.* § 9–507(2), or over contract performance, *id.* § 9–508(2), such as "controversies based upon breach of contract, mistake, misrepresentation, or other cause for contract modification or rescission," *id.* § 9–103(1).

In sum, public contract law, as reflected in the federal statute and the ABA Model Procurement Code, clearly distinguishes "protests" of pre-award complaints from other contract disputes, supplying substantially earlier filing deadlines for the former.

### B.

Presumably aware of this background, the Council of the District of Columbia enacted the Procurement Practices Act of 1985, effective February 21, 1986. *See* 33 D.C.Reg. 1291 (1986); 32 D.C.Reg. 7396–7429 (1985).[4] The Council created a jurisdictional structure for the Contract Appeals Board similar to the one provided under the Model Code for the Procurement Appeals Board. The 1985 Act provides:

> The Board shall be the exclusive hearing tribunal for, and shall have jurisdiction to review and determine de novo:
>
> (1) Any *protest* of a solicitation or award of a contract addressed to the Board by any actual or prospective bidder or offeror, or a contractor who is aggrieved in connection with the solicitation or award of a contract; and
>
> (2) Any *appeal* by an aggrieved party from a final decision by the Director which is authorized by this chapter.

D.C.Code § 1–1189.3 (1987) (emphasis added); *see* MODEL PROCUREMENT CODE §§ 9–

505, –507(2), –508(2) (protest initially may be lodged either with designated procurement official or with Procurement Appeals Board, but appeal shall be taken directly to Board).

As in the federal statute and the Model Code, the Council provided different time limits for filing protests and appeals:

> [A] protest of a solicitation or award of a contract addressed to the Board by any actual or prospective bidder ... who is aggrieved in connection with the solicitation or award of a contract ... shall [be filed] with the Board within 10 working days after the aggrieved person knew or should have known of the facts and circumstances upon which the protest is based.

D.C.Code § 1–1189.8(a) & (b) (1987). The Board must then *"promptly* decide whether the solicitation or award was in accordance with the applicable law, regulations, and terms and conditions of solicitation." *Id.* § 1–1189.8(c) (emphasis added). In contrast, when an aggrieved party wishes to "appeal" a decision by the DAS Director, it must file the appeal "within 90 days from the date of receipt of [the] decision." *Id.* § 1–1189.4(a). Only when a small claims procedure is invoked does the Board have a time limit within which to rule: 90 days "whenever possible." *Id.* § 1–1189.4(f).

The 1985 Act does not define "protest" or "appeal," but the legislative history gives no indication that the Council intended to depart from the conventional meanings of those terms. The consistent coupling of "protest" with "solicitation or award" or with "bids," both in the text of the statute and in its legislative history, strongly suggests an intent to incorporate into our local law the understanding of "protest"—a pre-award dispute—that has

---

**4.** The legislative history does not refer to federal statutes or to the Model Procurement Code, but the similarities between those sources and the Procurement Practices Act of 1985 suggest the Council's awareness of these other models. Interestingly, the REPORT OF THE COMMITTEE ON GOVERNMENT OPERATIONS ON BILL No. 6–191, "DISTRICT OF COLUMBIA PROCUREMENT PRACTICES ACT OF 1985," at 1 (Oct. 10, 1985), notes that "[t]he bill repeals present statutes for contracting which,

for the most part, were enacted around the turn of the century, and are outdated and insufficient for modern municipal procurement activities. These outdated statutes have been augmented by a series of executive orders, resulting in the District's present system of decentralized procurement." *See generally* Splitt, *Here's the Fine Print: A Guide to Procurement Law in the District,* Wash.Law., May/June 1988, at 24 ("The Old System").

become customary in public contract law. *See, e.g.,* D.C.Code §§ 1–1189.3(1), –1189.-8(a) & (b) (1987); REPORT OF THE COMMITTEE ON GOVERNMENT OPERATIONS ON BILL NO. 6–191, "DISTRICT OF COLUMBIA PROCUREMENT PRACTICES OF 1985", at 5 (Oct. 10, 1985) (REPORT). More specifically, the Council committee noted in its report a distinction between resolution of "protests" as to "bids and solicitations" and review of the DAS Director's decisions in "contract disputes":

> Title IX of the bill [Subchapter IX of the Act] creates a Contract Appeals Board to hear and decide on decisions rendered by the Director concerning contract disputes. The bill *also* allows for direct appeal to the Board for *protests* for bids and solicitations.

REPORT at 5 (emphasis added).[5]

The Council has made clear, moreover, that the Board's jurisdiction over "appeals" encompasses only two categories of disputes, namely, disputes concerning performance of contracts, D.C.Code § 1–1188.5 (1987), and controversies over debarment or suspension, *id.* § 1–1188.4. According to the committee report:

> In addition, Title VIII of the bill [Subchapter VIII of the Act] provides for the Director to settle disputes arising from the performance of contracts. The Director is authorized to debar or suspend persons from receiving contracts for specific reasons as set forth. The Director has the authority to render decisions on claims arising from an aggrieved contractor, thus providing an administrative mechanism for resolving disputes. *Appeals* of these decisions are made to the Contract Appeals Board.

Report at 4–5 (emphasis added). Finally, the provision of different filing deadlines for protests and appeals, respectively, further indicates the Council's intent to treat pre-award and post-award disputes altogether differently, given the different concerns inherent in these respective categories of disputes.

## IV.

Before considering Jones & Artis' fundamental argument that the DAS Director's cancellation of the first invitation for bids on August 13, 1986 was a final "decision" subject to an "appeal," not merely to a "protest," we note petitioner's threshold argument: that the Contract Appeals Board, having only one member (the Chairman), was improperly constituted and, consequently, lacked power to make a final decision. Must we deal with this argument if our principal concern is this court's jurisdiction?

Inherent in our reviewing a decision of the Board—if we have jurisdiction—is a premise that the Board itself acted within its own prescribed powers in ruling that Jones & Artis had filed a "protest," not an administrative "appeal." Arguably, we could simply assume, without deciding, that the Board acted properly and determine our own jurisdiction by deciding as a matter of law whether the Board ruled on a "protest" or an "appeal." Then, only if we concluded an appeal was involved would we have jurisdiction to determine whether the Board was properly constituted.

On the other hand, in deciding such a question of law we shall be "reviewing the construction of the statute by the agency charged with its interpretation and enforcement, [and] the agency's interpretation is controlling unless it is plainly erroneous or inconsistent with the statute." *Totz v. District of Columbia Rental Accommodations Commission,* 412 A.2d 44, 46 (D.C. 1980) (citing *1880 Columbia Road, N.W. Tenants' Association v. District of Columbia Rental Accommodations Commission,* 400 A.2d 333, 337 (D.C.1979)); *see George Washington University v. District of Columbia Board of Zoning Adjustment,* 429 A.2d 1342, 1348 (D.C.1981). Accordingly, unless the proper interpretation of the statute is so clear that we could appropriately ignore what the Board itself

---

5. Although the Council used the term "appeal" when it referred to protests under Subchapter IX, it clearly meant "resort" in this context rather than "review" in the sense of appellate review, since all protests under the 1985 Act must be lodged directly with the Board rather than with a procurement official as the Model Procurement Code permits.

has said, we should have the benefit of the Board's own interpretation. Given the lack of legislative history on the meaning of "protest" and "appeal" under the 1985 Act, we cannot easily assume that we should act without considering the views of the Board —*if* the Board was properly constituted when it ruled and thus spoke with the force necessary to elicit our deference. We conclude that, in aid of determining our own jurisdiction, the better course is to resolve, first the challenge Jones & Artis has made to the status of the present Contract Appeals Board and of its chairman.

### A.

The Procurement Practices Act of 1985 calls for creation of a Contract Appeals Board with a chairperson and four other members, all of whom are to be appointed by the Mayor with the advice and consent of the Council. D.C.Code § 1-1189.1(a)(1) & (3) (1987). A quorum consists of at least three members. *Id.* § 1-1189.1(b). The appointments mandated by the Act, however, have yet to be made and confirmed.

There is, nonetheless, an existing Contract Appeals Board created by Commissioner's Organization Order No. 9, D.C. Code Title 1, Appendix (Supp. V 1978), as amended by Mayor's Order 82-224, 30 D.C. Reg. 497 (1983). This Board continues to operate under the 1985 Act on an interim basis, as authorized by Mayor's Order No. 86-65, which provides:

> Except to the extent inconsistent with the District of Columbia Procurement Practices Act of 1985 (hereinafter, "the act") the terms of Organization Order No. 9, as amended, governing the District of Columbia Contract Appeals Board shall remain in effect....

> \* \* \* \* \* \*

Until the new Contract Appeals Board is established pursuant to the terms of the act, the present Contract Appeals Board shall continue to function.

33 D.C.Reg. 3006 (1986). As a consequence of incorporating the old Board as the interim new Board under the 1985 Act, this order expanded the Board's jurisdiction to permit adjudication of protests in addition to its pre-existing jurisdiction limited to appeals.[6] (No one in this case has questioned the Mayor's authority to issue Order 86-65.)

Order 86-65 did not affect how the old Board—now the interim new Board—is organized. Order 82-224, amending Organization Order No. 9 in 1982, created a Board of at least three members to be appointed without confirmation by the Council. Two of them, including the Chairperson, had to be lawyers appointed by the Corporation Counsel. The Mayor was authorized to appoint the other Board member(s). Order 82-224 further provided:

> Except as otherwise provided by its rules, decisions of the Board finally adjudicating contract claims or other disputes shall be rendered by panels of not less than three members, but any two members of a panel shall constitute a quorum for the transaction of any business of the Board.

30 D.C.Reg. 497 (1983). Under Board rules, however,

> [t]he Chairperson, acting alone may take any action which these rules authorize or require the Board to take, and any such action taken by the Chairperson, including making of orders, shall be deemed the action or order of the Board; Provided, however, that the Chairperson acting alone may not make any decision which constitutes a final disposition of any appeal or part thereof except pursuant to stipulation of the parties.

27 DCMR § 100.5 (1985). Jones & Artis argues that because the Board that adjudicated its complaint had only one active

---

**6.** Under Commissioner's Organization Order No. 9, Part IV, D.C.Code Title 1, Appendix 142, 144 (Supp. V 1978), protests were heard not by the Contract Appeals Board but by the Mayor's Contract Review Committee. In addition, the federal General Accounting Office, which by statute hears protests for federal agencies, voluntarily agreed with the District government to hear protests under the District's procurement system. According to the Board's brief, the Mayor, by letter of March 20, 1985 to the General Counsel of GAO, declined GAO's offer to continue hearing protests for the District.

member, the Chairman, and because the parties did not stipulate, pursuant to § 100.5 of the rules, that the Chairman could act alone, his "final disposition" of Jones & Artis' "appeal" was invalid.

Before the 1985 Act, this court had no jurisdiction to entertain direct appeals from decisions of the Contract Appeals Board. *Gunnell Construction Co., Inc. v. Contract Appeals Board,* 282 A.2d 556 (D.C. 1971) (*Gunnell I*). Such appeals were heard by the Superior Court. *See id.* at 558. The 1985 Act, however, purported to establish the right of a contractor, or of DAS itself, to appeal a decision of the new Board directly to this court. D.C.Code § 1–1189.5 (1987). Consequently, by seeking review in this court, Jones & Artis implicitly concedes the authority of the old Board, if properly constituted, to function under the 1985 Act pursuant to Order 86–65 until a new Board is appointed and confirmed.[7] This means that the issue is limited to whether the Board, in dismissing Jones & Artis' "appeal," acted lawfully with a quorum as defined and required by Order 82–224 and the Board's related rules.

### B.

■ We cannot address this question, however, without first considering the Board's contention that Jones & Artis has waived the quorum argument by failing to raise it before the Board. The record reflects that Chairman Sharpe held a conference on April 8, 1987, on the proposed dismissal of Jones & Artis' purported "appeal." At that time, Jones & Artis should have perceived that one person was handling the case. Even if petitioner were not aware that the Chairman was acting alone, however, it learned he was doing so no later than the day it received the final

decision signed only by the Chairman. Jones & Artis failed to raise the quorum issue either at the April 8 conference or after the decision, even though the Board's rules explicitly provided for reconsideration when the Chairperson acts alone.[8]

The failure to confront the Board—in this case, the Chairman—with the quorum issue amounted to a waiver of that alleged defect on appeal unless the lack of a quorum can be said to have deprived the Board of jurisdiction. *See United States v. Tucker Truck Lines,* 344 U.S. 33, 37–38, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952); *National Labor Relations Board v. Newton–New Haven Co.,* 506 F.2d 1035, 1038 (2d Cir.1974). In *Tucker Truck Lines,* a trucking company challenged an Interstate Commerce Commission decision on the ground that the hearing examiner, whose recommendation the Commission adopted in substance, had not been properly appointed under the Administrative Procedures Act. Because this alleged irregularity did not "deprive[ ] the Commission of power or jurisdiction," the Supreme Court declined to consider it, even though the irregularity "would invalidate a resulting order if the Commission had overruled an appropriate objection made during the hearings." 344 U.S. at 38, 73 S.Ct. at 69. Similarly, in *Newton–New Haven Co.,* the court ruled on the basis of *Tucker Truck Lines* that the company could not question whether the NLRB panel had violated the quorum requirement because it had failed to raise that issue before the NLRB itself. 506 F.2d at 1038.

Jones & Artis argues that these cases are not controlling because, in challenging the authority of the Chairman to act alone, it questions the Board's very power to act: a jurisdictional challenge. In *Railroad*

---

7. Relying on *Gunnell I,* respondent, the Contract Appeals Board, argues that this court does not have jurisdiction over this appeal. Respondent, however, has not challenged the validity of Order 86–65 whereby the old Board is to function as the interim new Board under the 1985 Act. Because that Act provides for this court's review of the Board's final decisions, *Gunnell I* does not apply.

8. 27 DCMR § 100.6 (1985) provides:

Any party adversely affected by any action taken by the Chairperson pursuant to § 100.5 who has not stipulated with respect thereto shall be entitled to a reconsideration by the Board, if, within ten (10) days after the Chairperson has transmitted to the party a copy of the order or other notice of the action taken by the Chairperson, the party files with the Board a motion for reconsideration setting forth the grounds therefor. Every motion shall be acted upon by the Board.

*Yardmasters of America v. Harris,* 232 U.S. App. D.C. 171, 721 F.2d 1332 (1983), the United States Court of Appeals for the District of Columbia Circuit noted "it is not always obvious which questions are 'jurisdictional' for purposes of avoiding waiver at the administrative level." *Id.* at 177 n. 20, 721 F.2d at 1338 n. 20 (citations omitted). In that case, however, the court did hold that a quorum challenge was jurisdictional. Only one of three members of the National Mediation Board remained in office, and he had acted on behalf of the Board to certify the election of a union representative. The Court ruled the contention "that the National Mediation Board had no power to act at all at a time when there were two vacancies on the Board ... presents a question of power or jurisdiction and is open to appellee even if not initially asserted before the Board." *Id.* at 177, 721 F.2d at 727 (footnote omitted). (A divided court then held that the so-called "delegation provision" in the governing statute authorized the single member to act on the Board's behalf under the circumstances, and that the provisions respectively applicable to vacancies and to establishment of a quorum did not impair the delegation.)

 Unlike the appellee in *Railroad Yardmasters of America,* Jones & Artis does not challenge the power of the Board to act through the Chairman but only the authority of the Chairman to act alone in this particular case, absent a "stipulation of the parties." 27 DCMR § 100.5 (1985). We do not have a case where, allegedly, the Board was inherently without authority to act through one member. Under these circumstances, it is important to stress that

"orderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has opportunity for correction in order to raise issues reviewable by the courts." *Tucker Truck Lines,* 344 U.S. at 37, 73 S.Ct. at 69. In light of this strong policy, we believe that Jones & Artis' failure to raise the quorum issue before the Board was an acquiescence, tantamount to a stipulation under the rules, that the Chairman could act on behalf of the Board —as has been customary for appeals, upon stipulation, irrespective of quorum requirements.[9]

Jones & Artis argues that the Board, having but one member, its Chairman, could not effectively arrange to enlarge its membership; raising the quorum issue at the Board level would have been futile. It would follow that no such stipulation should be inferred. On this record, we cannot be sure of that. Counsel for the Board asserts in his brief that under Order 82–224,

> [c]ity employees or other qualified persons can be appointed to the Board by either the Mayor or the Corporation Counsel, with no need for confirmation by the City Council. If Jones & Artis had asserted the need for a multi-member panel before the Board (and been persuasive), a multi-member panel could quickly and easily have been assembled.

Petitioner has not refuted that assertion. Accordingly, we hold that Jones & Artis has waived its objection to the Chairman's acting on behalf of the Board, and thus we need not address the merits of that argument.[10]

---

9. The decision of the United States Court of Appeals in *Gunnell Construction Co., Inc. v. District of Columbia,* 179 U.S.App.D.C. 239, 551 F.2d 425 (1977) (*Gunnell II*) does not help appellant. In *Gunnell II,* the court held that a defective quorum of the Contract Appeals Board required a remand for reconsideration of the hearing transcript by a properly constituted panel, including at least one "technical" member. Apparently the "waiver" issue was not raised, either before the district court or on appeal. Thus, the District of Columbia can be said implicitly to have waived its waiver argument. Moreover, there is no indication that the court of appeals premised its ruling on a per-

ceived jurisdictional defect in the Board. In any event, as indicated in the text above, Jones & Artis attacks not the power of the Board to act solely through its Chairman but the authority of the Chairman to act alone in this particular case—an issue that contests procedure, not jurisdiction.

10. The chapter of the Board's rules that include 27 DCMR § 100.5 was amended by 33 D.C.Reg. 24 (1986), a month after the Mayor signed the Procurement Practices Act of 1985. Despite the statutory expansion of the Board's jurisdiction to include protests as well as appeals, *see supra* note 5, § 100.5 of the Board's rules was not

## V.

We turn, finally, to the central issue: did Jones & Artis file a timely "appeal" or an untimely "protest"? According our usual deference, we agree with the Board that Jones & Artis' "Notice of Appeal ... constitute[d] an untimely protest," since it concerned "a solicitation or award of a contract." D.C.Code § 1–1189.3(1) (1987); *see supra* Part III.B.[11]

### A.

■ Challenges to cancellations of invitations for bids (IFBs) are commonly treated as subjects for protests. The General Accounting Office (GAO) has authority under 31 U.S.C. § 3553 (Supp. IV 1986) to decide protests but not other contract disputes in the federal system. *See Rice Services Ltd.*, Comp.Gen.Dec. B–227119, July 28, 1987, 87–2 CPD ¶ 102; *Brown Root Services Corp.*, Comp.Gen.Dec. B–228331, Dec. 10, 1987, 87–2 CPD ¶ 575. In this connection, the GAO routinely decides challenges to cancellation of IFBs. *See, e.g., Union Natural Gas Co.*, Comp.Gen.Dec. B–224607, Jan. 9. 1987, 87–1 CPD ¶ 44; *Snowbird Industries, Inc.*, Comp.Gen.Dec. B–226980, June 25, 1987, 87–1 CPD ¶ 630; *Rice Services Ltd., supra; Brown Root Services Corp., supra.* Significantly, the Comptroller General has dismissed protests of cancellations of IFBs as untimely when they were filed more than 10 days from the time the protester learned of the cancellation. *See, e.g., Billings American Indian Council*, Comp.Gen.Dec. B–228989, Dec. 29, 1987, 87–2 CPD ¶ 639.

On the other hand, federal agency boards of contract appeals, which generally lack protest jurisdiction,[12] routinely have refused to hear challenges to cancellations of IFBs even when labeled, as in this case, as "appeals". *See, e.g., R.F. Brierly*, ASBCA No. 33682, Nov. 18, 1986, 87–1 BCA ¶ 19,501 (Armed Services Board of Contract Appeals dismissed for lack of jurisdiction challenge to cancellation of Navy IFB, noting that "appellant's 'appeal' is clearly a protest"); *see also Coastal Corp. v. United States*, 713 F.2d 728 (Fed.Cir.1983) (Department of Energy Board of Contract Appeals' decision on merits, denying bidder's claim for bid preparation costs after cancellation of IFB, vacated because Board lacked jurisdiction to adjudicate honesty and fairness in treatment of bids); *Wendel Lockard Construction Co.*, ASBCA No. 33896, July 15, 1987, 87–3 BCA ¶ 20,055 (appeal from contracting officer's denial of request for damages suffered as result of IFB cancellation dismissed because boards of contract appeals lack jurisdiction over protests).

When the GAO fielded protests for the District of Columbia before the 1985 Act became effective, *see supra* note 6, it characterized challenges to the District government's cancellation of solicitations as protests. *See, e.g., Coastal Striping & Painting Corp.*, Comp.Gen.Dec. B–214869, Dec. 26, 1984, 84–2 CPD ¶ 697; *Systems Group Associates, Inc.*, Comp.Gen.Dec. B–198340,

amended to preclude the Chairman from acting alone to decide protests, in contrast with appeals, absent stipulation of the parties. Thus, at least arguably under the interim Board structure, the Chairman alone is authorized in every case to resolve protests—an issue we need not decide in view of our ruling that Jones & Artis has waived objection to the Chairman's acting on behalf of the Board.

**11.** The Board elaborated, and we agree: "§ 1–1189.3(1) not only establishes how an aggrieved party is to proceed with the Board respecting a matter concerning a solicitation or award of a contract, but it also implicitly defines the term 'protest' to mean an action complaining 'of a solicitation or award of a contract addressed to the Board by any actual or prospective bidder or offerer, or a contractor who is aggrieved in connection with the solicitation or award of a contract.' "

**12.** Under the federal Contract Disputes Act of 1978, Pub.L. No. 95–563, 92 Stat. 2383 (1978) (codified at 41 U.S.C. §§ 601–13 (1982)), boards of contract appeals have jurisdiction only if a contractual relationship exists between the parties. There is an exception to this rule: the Board of Contract Appeals of the Department of Housing and Urban Development has limited jurisdiction to hear bid protests in cases where the Comptroller General has no authority to rule. *Gardner Realty and Associates, Inc.*, HUD BCA No. 80–454–B1, May 6, 1980, 80–2 BCA ¶ 14,512; *see* 2 R. Nash, Jr. & J. Cibinic, Jr., *supra* at 2050–51, n. 1.

July 28, 1981, 81–2 CPD ¶ 64; *M. Bennett Ltd.*, Comp.Gen.Dec. B–198316, May 27, 1980, 80–1 CPD ¶ 363; *Precision Analytical Laboratories*, Comp.Gen.Dec. B–188627(1), Oct. 10, 1978, 78–2 CPD ¶ 262. The Council has given no indication that, in enacting the 1985 Act, it intended to deviate from this established use of a "protest" once the Contract Appeals Board succeeded the GAO for this purpose.

### B.

Jones & Artis argues that, in contrast with the foregoing caselaw, its objection to the IFB cancellation is not based on technical defects apparent on the face of the IFB or on objections to alleged changes in governmental needs or resources. More specifically, petitioner argues that the IFB cancellation here was not premised, as the cited cases were, on the kinds of cancellation criteria specified in the applicable Materiel Management Manual (MMM) ¶ 2620.13(A)(2)(a)—(f).[13] Instead, according to Jones & Artis, the IFB cancellation of August 13, 1986 resulted from a lengthy and flawed "unilateral" investigative process concerning "unique circumstances" in which Jones & Artis, but not its competitor, was excluded from participation. Accordingly, says petitioner, even if IFB cancellations normally should be "protested," the circumstances here, devoid of any rationale justified by the MMM, transmute this particular cancellation into "a final decision by the Director" of DAS entitling Jones & Artis to "appeal." D.C.Code § 1–1189.3(2) (1987).

We discern no basis for rejecting the Board's view that the circumstances cited by petitioner make no difference here. We note, first, that the Director cancelled the IFB "in the best interest of the District government," tracking D.C.Code § 1–1183.7 (1987) (cancellation of invitations for bids). Petitioner has not established that the MMM cancellation criteria comprise an exclusive expression of the "best interest" test. Jones & Artis, moreover, does not offer any example where a pre-award objection, applicable to cancellation of an IFB, has been treated as anything other than a protest. In effect, petitioner argues only that allowance of its particular type of challenge after the 10–day deadline for a protest would promote a fuller and fairer redress of grievances under complicated circumstances.

But Jones & Artis has not shown why challenging a decision to cancel an IFB after an extensive investigation requires a lengthier filing deadline than challenges to other bid cancellations. Petitioner merely asserts that the 10–day limit within which to evaluate whether to challenge the Director's determination, without regard to the length of the investigation leading up to it, is too short. We would be astonished if Jones & Artis' decision whether to object, either by protest or by appeal, was a difficult one in this case; apparently millions of dollars are at stake. And, in any event, we perceive no reason why, after timely protest, Jones & Artis would not have been able to develop and present its case without an undue rush under the circumstances.

The record shows that Jones & Artis was conversant with protests. For example, it noted that MTI, in opposing Jones & Artis' bid, had filed its protest in the wrong forum by going to DAS, not to the Board. Furthermore, Jones & Artis filed a timely "protest" to the second IFB in this case. We discern no reason why Jones & Artis could not have been expected to do so with respect to cancellation of the first IFB. To the extent that Jones & Artis was

---

**13.** According to Jones & Artis' summary in its reply brief, those cancellation criteria "include inadequate, ambiguous, or otherwise deficient specifications, services that are no longer required, an IFB that does not provide for all factors of cost, the needs of the District can be met less expensively, the bids were not independently arrived at, or the bids did not provide competition to insure reasonable prices."

The D.C. Department of General Services adopted the MMM in 1974; it was "incorporated by reference" in a notice of proposed rulemaking. 20 D.C.Reg. 1095 (1974). In 1985, the MMM was incorporated by reference into the municipal regulations. 27 DCMR § 1000.1 (1985). One author recently has questioned whether the MMM has been properly adopted, an issue we do not address. Splitt, *Here's the Fine Print, supra* note 4, at 24.

precluded from substantive adjudication of a complaint, it has failed to demonstrate that anything but its own omission to file a protest within the deadline was responsible for that outcome.[14]

The Board correctly concluded that a "protest," not an administrative "appeal," is at the heart of this proceeding. Accordingly, the Board was not presented with a "contested" case. Nor are we. We are without jurisdiction here.

APPEAL DISMISSED.

ROGERS, Associate Judge, concurring:

The majority opinion states that "no one in this case has questioned the Mayor's authority to issue Order 86–65."[1] *See* majority opinion at 322. That order purported to postpone the effective date of some provisions of the District of Columbia Procurement Practices Act of 1985 (new Act). Appellant Jones & Artis argued only that the Board Chairman exceeded his authority by acting without a quorum. Respondent, the majority states, did not question the validity of Mayor's Order No. 86–65, but contended only that the Contract Appeals Board dismissing Jones & Artis' "appeal" was not the Board created by the new Act, and hence was not the Board from which appeals to this court may be taken under the new Act and, consequently, this court lacked jurisdiction under *Gunnell Constr. Co. v. Contract Appeals Bd.*, 282 A.2d 556 (D.C.1971) (concerning Contract Appeals Board established by Commissioner's Organization Order No. 9[2]). *See* majority opinion at 323 n. 7.

That notwithstanding, the court itself raised the issue of the validity of Mayor's Order No. 86–65 at oral argument. Respondent at that time could offer no authority to support the mayoral action in lieu of amendment of the Act by the Council of the District of Columbia to delay the effective date. *Cf.* D.C.Code §§ 1–319, –320 (1987 Repl.); *Glover v. District of Columbia*, 250 A.2d 556, 559 (D.C.1969) (public necessity requiring curfew). Nor has this court subsequently been referred to supporting authority.[3]

In addition, the majority opinion acknowledges that "[i]nherent in our reviewing a decision of the Board ... is a premise that the Board itself acted within its own pre-

**14.** The Board ruled, and argues on appeal, "that the term 'final decision' as used in § 1–1189.3(2) does not encompass the determination to cancel an invitation for bids required by § 1–1183.7." In reaching this conclusion the Board has catalogued provisions of the 1985 Act addressing "decisions" and "determinations" and concluded that they are mutually exclusive. It follows, according to the Board, that determinations, unlike decisions, cannot be subject to "appeal." The Council did not provide a definition of "decision" or "determination" in either the text of the statute or in its legislative history. It also is not clear the Council intended that "determinations" could never be appealable "decisions." Even if the Council did intend to exclude "determinations" from the right of appeal, however, one could argue that, while evaluation of the "best interest of the District government" under § 1–1183.7 results in a "determination," the IFB cancellation based on that determination is a "decision." Despite our usual deference to an agency charged with interpreting the statute it administers, we need not resolve these issues, for we have concluded that the critical distinction between a "protest" and an "appeal" under the 1985 Act is the pre-award nature of a protest, not the difference between a "determination" and a "decision."

There are two other issues. The record reflects discussion before the Contract Appeals Board about whether a contractual relationship with the government is necessary before a business has standing to appeal. Jones & Artis contends that it fits the definition of a "contractor" eligible to bring appeals under D.C.Code § 1–1189.4 (1987), even though this case concerns a cancelled bid, not a contract. We need not resolve that issue in determining that petitioner had no basis for an "appeal" and thus that we lack jurisdiction.

Finally, Jones & Artis argues that the Procurement Practices Act of 1985, by setting different deadlines for protests and for appeals, violates the fifth amendment guarantee of equal protection. Resolution of this issue has no bearing on our jurisdiction, but we do note that the two types of deadlines apply equally to all persons.

**1.** 33 D.C.Reg. 3006 (1986) (Order 86–65 amending Organization Order No. 9, as amended by Order 82–224).

**2.** *See* 1 D.C.Code Appendix (1978 Supp. V); 30 D.C.Reg. 497 (1983) (Order 82–224 amending Organization Order No. 9).

**3.** The court did not request that the parties file supplemental briefs on the issue.

scribed powers...." The majority further reasons that because this court will defer to agency interpretation of its enabling statute, the court must be certain that the Board "spoke with the force necessary to elicit our deference." *See* majority opinion at 321–322. All this said, the majority proceeds to defer to the Board, *see, e.g.,* majority opinion at 324, 326–327, but nonetheless concludes inplicitly that it need not examine whether the Board established by Mayor's Order 86–65 may lawfully exercise powers under the new Act. In its view, appellants have "implicitly conceded" the validity of Mayor's Order 86–65 by seeking review in this court. *See* majority opinion at 323. Yet a fairly fundamental issue, involving the separation of powers under the District of Columbia Self–Government and Governmental Reorganization Act,[4] potentially makes everything that happened here null and void.

I join the majority in dismissing the appeal for lack of jurisdiction. It is undisputed that the Board that acted here is not the Board entitled to appeal under the new Act, and since parties cannot confer jurisdiction on this court, *Gunnell* is controlling. Hence, there is no need to reach the issue of the validity of Mayor's Order No. 86–65.

---

**4.** Pub.L. 93–198, Dec. 24, 1973, 87 State. 774, 1 D.C.Code 175–247 (1981).