**DISTRICT OF COLUMBIA HOUSING AUTHORITY, Petitioner,**

v.

**DISTRICT OF COLUMBIA DEPARTMENT OF HUMAN RIGHTS AND LOCAL BUSINESS DEVELOPMENT, Respondent,**

**George W. Brummell, Sr., Intervenor.**

**No. 98–AA–140.**

District of Columbia Court of Appeals.

Argued June 2, 1999.

Decided July 22, 1999.

Ralph C. Conte, Assistant General Counsel, with whom Kim Kendrick, General Counsel, and Awo Sarpong, Deputy General Counsel, were on the brief, for petitioner.

Anthony Graham Washington, DC, for intervenor.

Charles L. Reischel, Deputy Corporation Counsel, with whom Jo Anne Robinson, Principal Deputy Corporation Counsel, was on the brief, for the District of Columbia.

Before TERRY, STEADMAN and REID, Associate Judges.

REID, Associate Judge.

This case concerns the District of Columbia Housing Authority's ("DCHA") petition for review of a decision of the Director of the District of Columbia Department of Human Rights and Local Business Development ("DHR") affirming a summary determination finding age and national origin discrimination by DCHA against intervenor George W. Brummell, Sr. When the alleged acts of discrimination occurred on November 10, 1993, and when the discrimination complaint was filed on March 2, 1994, Mr. Brummell was an employee of the District of Columbia Department of Public and Assisted Housing ("DPAH"). Effective March 21, 1995, DPAH was abolished and DCHA created in its stead. DHR's summary determination in Mr. Brummell's favor, signed on September 16, 1997, by the Director of DHR, recognized the change to DCHA, and ordered his reinstatement to DCHA, back pay and other relief. Both the summary determination and the Director's determination on reconsideration, signed on January 12, 1998, were issued against DCHA. DCHA filed the petition for review in this court.

Mr. Brummell and the District of Columbia ("the District"), which filed a brief and presented oral argument in its own behalf, take the position that this court lacks jurisdiction to hear this matter. We agree and conclude that the proper forum for this petition is the Superior Court of the District of Columbia. Thus, we dismiss the petition for lack of jurisdiction.[1]

## ANALYSIS

The District and Mr. Brummell contend that this court has no jurisdiction to conduct an initial review of this matter and that the proper forum is the Superior Court of the District of Columbia. They

1. Given our dismissal, we do not consider the other issues presented by the petition.

invoke D.C.Code § 1–1510(a) (1992), which provides in pertinent part: "Any person suffering a legal wrong, or adversely affected or aggrieved, by an order or decision of the Mayor or an agency in a contested case, is entitled to a judicial review thereof ... upon filing in the District of Columbia Court of Appeals a written petition for review." [2] They argue that this is not a "contested case" because § 1–1502, which defines "contested case," specifically excludes cases involving "[t]he selection or tenure of an officer or employee of the District." [3]

Contrary to the position of the District and Mr. Brummell, DCHA contends that this court does have jurisdiction over this matter. It argues that the "contested case" exclusion set forth in § 1–1502(8)(B) does not apply since "DCHA is not an agency of the District, but rather an independent corporate entity which is also an instrumentality of the District ...." Further, DCHA argues, "upon the abolishment of DPAH, [Mr.] Brummell could no longer be placed in a position in which he would be classified as a District employee, but rather, would be classified as a DCHA employee, subject to DCHA's personnel policies and procedures ...." DCHA also asserts that it does not fall within the definition of "agency" set forth in § 1–1502(3), (4) and (5) because "nowhere in the [District of Columbia Administrative Procedure Act] does the statute indicate that an 'instrumentality' is included under the term 'independent agency.' " [4] Moreover, DCHA contends that "since [it] is an instrumentality of the District, and is a corporate body with a legal existence separate from the District ... the relief that DHR ordered no longer involves the reinstatement of a DPAH employee, but rather, the placement of a former DPAH employee into DCHA's independent personnel system."

Section 1–1502(8)(B) explicitly states that this court does not have initial jurisdiction over a case pertaining to "[t]he selection or tenure of an officer or employee of the District." Mr. Brummell's case clearly involves the "selection of an employee" because his complaint challenges his non-selection for the position of modernization coordinator.[5] In addition, his case concerns a "day-to-day government personnel management" decision, and thus, appears to fall within the "tenure"

---

**2.** Because the summary determination and determination on reconsideration in this matter were issued by the Director of DHR, Mr. Brummell's case is a proceeding before the designee of the Mayor, and not an agency decision. Had the determinations been issued by the Commission on Human Rights, the matter would be a proceeding before an agency.

**3.** D.C.Code § 1–1502(8) provides in relevant part:
> The term "contested case" means a proceeding before the Mayor or any agency in which the legal rights, duties, or privileges of specific parties are required by any law ... or by constitutional right, to be determined after a hearing before the Mayor or before an agency, but shall not include:
> (A) Any matter subject to a subsequent trial of the law and the facts de novo in any court;
> (B) The selection or tenure of an officer or employee of the District;

**4.** D.C.Code § 1–1502(3) states: "The term 'agency' includes both subordinate agency and independent agency." Section 1–1502(4) specifies:
> The term "subordinate agency" means any officer, employee, office, department, division, board, commission, or other agency of the government of the District, other than an independent agency or the Mayor or the Council, required by law or by the Mayor or the Council to administer any law or any rule adopted under the authority of a law.

Section 1–1502(5) provides:
> The term "independent agency" means any agency of the government of the District with respect to which the Mayor and the Council are not authorized by law, other than this subchapter, to establish administrative procedures, but does not include the several courts of the District and the Tax Division of the Superior Court.

**5.** After Mr. Brummell failed to be selected for that position, his employment with DPAH was terminated as a result of a reduction in force.

exception to the contested case provision. *Kennedy v. Barry*, 516 A.2d 176, 179 (D.C. 1986) (interpreting *Money v. Cullinane*, 392 A.2d 998, 1000 (D.C.1978), to hold that "this court lacks jurisdiction to directly review denials of employees' requests for administrative leave because they fall within the tenure exception" to § 1–1502(8)). The only question with respect to § 1–1502(8)(B) is whether Mr. Brummell may properly be described as an "employee of the District."

D.C. Law 10–243, which created DCHA, became effective on March 21, 1995, before the Director of DHR issued the probable cause finding and the later summary determination and determination on reconsideration in Mr. Brummell's case, but after he filed his complaint on March 2, 1994. Thus, when the alleged act occurred and when his complaint was filed, he was in the status of an employee (present or former) of DPAH, although when the matter was resolved by DHR, DCHA had become the successor entity of DPAH.[6] The statute which established DCHA described it "as a corporate body which has a legal existence separate from the District government but which is an instrumentality of the District government ...."[7] D.C.Code § 5–122(a)

(1998 Supp.) The governing board of DCHA, the Board of Commissioners, is authorized, *inter alia*, "to adopt personnel rules and regulations ...." D.C.Code § 5–124(j)(4). Section 5–128 states, however, that:

> All employees of the Department of Public and Assisted Housing shall be transferred to [DCHA] and continue to be employees of the District of Columbia government; except that all new employees hired after March 21, 1995, shall be classified as Excepted Service in accordance with Chapter 6 of Title 1.

Thus, when DCHA was scheduled to begin its formal existence, Mr. Brummell's asserted rights flowed from his claim to a position as a District employee and would thus be deemed an employee of the District government within the meaning of the statutory provision.

Despite the plain language of § 5–128 that Mr. Brummell would "continue to be [an] employee[ ] of the District of Columbia government," DCHA argues that its status as an instrumentality takes Mr. Brummell's case out of the reach of § 1–1502(8)(B). Assuming, without deciding, that there is merit to DCHA's position,[8] we

---

**6.** On May 18, 1995, a judge of the Superior Court of the District of Columbia signed an order appointing a receiver for DPAH and successor agencies. The receivership did not alter the statutory corporate nature of DCHA. *See In re G.G., Jr.*, 667 A.2d 1331, 1333 n. 4 (D.C.1995)("a receivership does not make a public agency private").

**7.** The language in D.C.Code § 45–2111 (1996) creating DCHA virtually mirrors that used to establish the District of Columbia Housing Finance Agency:

> The District of Columbia Housing Finance Agency is created as a corporate body which has a legal existence separate from the government of the District but which is an instrumentality of the government of the District created to effectuate certain public purposes.

**8.** The terms "an agency of government" and "an instrumentality of government" are often regarded as having the same meaning. Indeed, WEBSTER'S NEW WORLD DICTIONARY (2d ed.1982) defines "agency" to mean, *inter alia*,

"instrumentality"; and "instrumentality" to mean, *inter alia*, "agency." Nonetheless, there is some authority to suggest that these terms may be distinguished. *See First Nat'l City Bank v. Banco Para El Comercio Exterior De Cuba*, 462 U.S. 611, 624, 103 S.Ct. 2591, 77 L.Ed.2d 46 (1983):

> A typical governmental instrumentality, if one can be said to exist, is created by an enabling statute that prescribes the powers and duties of the instrumentality, and specifies that it is to be managed by a board selected by the government in a manner consistent with the enabling law. The instrumentality is typically established as a separate juridical entity, with the powers to hold and sell property and to sue and be sued. Except for appropriations to provide capital or to cover losses, the instrumentality is primarily responsible for its own finances. The instrumentality is run as a distinct economic enterprise; often it is not subject to the same budgetary and personnel requirements with which government agencies must comply.

conclude that the status of an instrumentality would not trump the legislature's clear intent to continue existing employees of DPAH as employees of the District government, at least as to the rights accruing before the creation of the new successor instrumentality.

In enacting the District of Columbia Housing Authority Act of 1994, the Council created "a corporate body which has a legal existence separate from the District government but which is an instrumentality of the District government," but in its wisdom decided that existing employees of DPAH would retain their status as District government employees. During testimony on the bill creating DCHA, concerns were raised as to the status of then current DPAH employees. For example, in his statement of June 29, 1994, the Acting Director of DPAH, Jasper Burnette, pointed out that the bill "did not adequately discuss the status of current employees," those who were within the Federal retirement system as well as those in the District government retirement program. Undoubtedly, in response to these concerns, the Council of the District of Columbia made it clear that "[t]he [enabling] legislation transfers all DPAH employees to the new Authority as employees of the District except for new hires who will be classified as excepted service." COUNCIL OF THE DISTRICT OF COLUMBIA, COMMITTEE ON HOUSING, REPORT ON BILL 10–671, The "District of Columbia Housing Authority Act of 1994," at 3 (October 24, 1994)("COMMITTEE REPORT"). The section-by-section analysis of the bill states with respect to section 10, codified as § 5–128: "Transfers DPAH employees to DCHA for continued employment as District employees, except that those who are hired after the effective date of the Act would be classified as excepted service." COMMITTEE REPORT at 21–22. Thus, there can be no doubt that the Council of the District of Columbia intended that Mr. Brummell, with rights as a District employee, would continue to retain those rights as a District government employee after the functions of DPAH were transferred to DCHA.

As an employee of the District, Mr. Brummell's matter falls squarely within the contested case exception in § 1–1502(8)(B). Under that provision, a petition for review of a DHR Director's decision, which pertains to " '[t]he selection ... of an ... employee of the District,' " must be filed in the Superior Court in the first instance, not in this court. *Kennedy, supra,* 516 A.2d at 178 (quoting D.C.Code § 1–1510(8)(B)); *see also Wells v. District of Columbia Bd. of Educ.,* 386 A.2d 703, 705 (D.C.1978) ("Congress excluded from the definition of a 'contested case' matters involving employee 'selection or tenure' "). Therefore, we are constrained to dismiss this matter for lack of jurisdiction.[9]

*So ordered.*

---

These distinctive features permit governmental instrumentalities to manage their operations on an enterprise basis while granting them a greater degree of flexibility and independence from close political control than is generally enjoyed by government agencies.
*See also T I Fed. Credit Union v. DelBonis,* 72 F.3d 921, 935 (1st Cir.1995) ("we make no effort to liken federal credit unions to government agencies; we are persuaded only that they are government instrumentalities, lesser in scope and in responsibility than actual government agencies").

9. None of the cases DCHA cited during oral argument, or in its subsequent citation of supplemental authorities under D.C.App. R. 28(k), support a determination that this court has jurisdiction in this matter. In *Timus v. District of Columbia Dep't of Human Rights,* 633 A.2d 751, 760 (D.C.1993), we concluded that we lacked jurisdiction under § 1–1502(8)(A) because that section "expressly excludes from the definition of a contested case '[a]ny matter subject to a subsequent trial of the law and facts de novo in any court.' " We held that the review should have been sought in the Superior Court. Furthermore, unlike

the case before us, the critical events in *Simpson v. District of Columbia Office of Human Rights*, 597 A.2d 392 (D.C.1991), took place in the early 1980s before principles governing contested case jurisdiction had been refined. Moreover, the petitioner in *Simpson* initially handled her case on a *pro se* basis. We concluded that "her securing of [later] representation cannot retroactively require her to have obtained a crystal ball many years earlier and to have predicted, at her peril, the development of this court's 'contested case' jurisprudence." *Id.* at 402. Nonetheless, we made it clear that the proper court for initial review was the Superior Court. The issue in *Jones & Artis Constr. Co. v. District of Columbia Contract Appeals Bd.*, 549 A.2d 315 (D.C.1988), was whether the petitioner filed an "appeal" of a Contract Appeals Board decision, a contested case, or a "protest" which is not a contested case. We agreed with the Board's determination that the matter was a " 'protest' " and not "an administrative 'appeal.' " *Id.* at 327. Thus, we dismissed the matter for lack of jurisdiction.

The other cases cited by DCHA centered on the nature of a contested case, or whether the petitioner received the requisite hearing with respect to the contested case. None of these cases pertained to an exception to the contested case provision as does the case before us. *See Auger v. District of Columbia Bd. of Appeals and Review*, 477 A.2d 196, 213 (D.C. 1984) (petitioner was not accorded the required administrative hearing for a contested case); *District of Columbia v. Douglass*, 452 A.2d 329, 330 (D.C.1982) ("issuance or denial of a license to practice naturopathy is a 'contested case' "); *Debruhl v. District of Columbia Hackers' License Appeal Bd.*, 384 A.2d 421, 425 (D.C.1978) (petitioner presented "a contested case" for review even though "there [were] no dis[puted] 'adjudicative facts' to be determined by the Board").