### DISTRICT OF COLUMBIA HOUSING AUTHORITY and the District Of Columbia, Appellants,

### v.

### DISTRICT OF COLUMBIA OFFICE OF HUMAN RIGHTS and George Brummell, Sr., Appellees.

### Nos. 02–CV–524, 02–CV–525.

District of Columbia Court of Appeals.

Argued Nov. 9, 2004.
Decided Aug. 25, 2005.

---

Michael F. Wasserman, Assistant Attorney General, with whom Robert J. Spagnoletti, Attorney General for the District of Columbia, Arabella W. Teal, Interim Corporation Counsel at the time, Charles L. Reischel, Deputy Corporation Counsel at the time, and Edward E. Schwab, Deputy Attorney General, were on the brief, for appellants.

Steven M. Schneebaum, Washington, DC, with whom Bret M. Koplow was on the brief, for appellees.

Anthony Graham, Sr., for appellee George Brummell, Sr.

Before SCHWELB, RUIZ and GLICKMAN, Associate Judges.

GLICKMAN, Associate Judge.

The District of Columbia Housing Authority ("DCHA"), joined by the District government, appeals from a judgment of the Superior Court upholding a determination by the former Department of Human Rights and Local Business Development ("DHR")[1] that the Department of Public

---

1. DHR was reorganized in 1999 as the District of Columbia Office of Human Rights ("OHR"). *See* D.C.Code § 2–1411.04, – 1411.06 (2001 & Supp.2004). The agency underwent no changes relevant to this case.

and Assisted Housing ("DPAH") [2] violated the Human Rights Act [3] by discriminating against an employee, George Brummell, Sr., on the bases of age and national origin. Brummell cross-appeals, asserting that the Superior Court lacked jurisdiction to hear DCHA's petition for review of DHR's action. Concluding that the trial court had jurisdiction, we reach DCHA's claims that DHR erred by: (1) not dismissing Brummell's discrimination complaint on account of his failure to seek relief first through consultation with an EEO counselor within DPAH, (2) not conducting an evidentiary hearing, and (3) finding that DCHA discriminated against Brummell based on the evidence of record. As we conclude that none of these claims entitles DCHA to relief, we affirm the judgment of the Superior Court.

## I.

### A. Non–Selection of Brummell

DPAH hired Brummell in 1987 to fill the position of Construction Analyst. According to the written requirements for the position, a Construction Analyst's responsibilities include directing the development of accurate cost estimates for major construction work, reviewing detailed cost analyses, designs and drawings submitted by architectural and engineering firms under government contracts to ensure budgetary compliance and conformance with Department policies, suggesting improvements in technical procedures and practices employed by the Chief of the Construction Management Division, and visiting construction sites to acquire first-hand information pertinent to cost estimation. A Construction Analyst is expected to possess knowledge of contracting procedures, cost price analysis, and "negotiation techniques ... to deal with contractors in resolving such problems as reducing costs and adjusting delivery schedules."

Brummell's term as a Construction Analyst was interrupted in August 1991 due to an agency-wide freeze on mid-level employees, and DPAH reassigned him temporarily to a Painter Foreman position. Brummell was returned to the job of Construction Analyst in February 1992 and remained in that position until November 12, 1993, when he lost his job due to a reduction in force. Throughout his tenure with DPAH, Brummell's performance ratings and supervisory appraisals were uniformly excellent.

On August 30, 1993, DPAH requested permission from the District of Columbia Office of Personnel ("DCOP") to establish six new "Modernization Coordinator" positions. DPAH described the duties of a Modernization Coordinator as follows:

> Responsible for overseeing the entire construction contract process, including preparing and issuing, subject to HUD approval, all modernization contract documents such as construction and bid documents, contract award, contract changes, time extensions and contract settlement documents . . . .

> Reviews plans, specifications and contract documents for the design, rehabilitation, alteration and/or repair of multi-family housing projects to assure their compliance with HUD standards, good

---

**2.** DPAH was abolished and replaced by DCHA pursuant to the D.C. Housing Authority Act of 1994. *See* D.C.Code § 5–121 *et seq.* (1981 & Supp.1999). The new entity was designed as a "corporate body which has a legal existence separate from the District government but which is an instrumentality of the District government...." *District of Columbia Hous. Auth. v. D.C. Dep't of Human Rights,* 733 A.2d 338, 342 (D.C.1999).

**3.** D.C.Code §§ 1–2501–2557 (1981) (re-codified at D.C.Code §§ 2–1401–1411 (2001)).

engineering practice and sound contracting procedures. Provide guidance to the A/E consultants in the preparation of such documents . . . .

Examines physical plant and interviews operating and maintenance personnel responsible for it. Makes recommendations for maintenance, physical improvement, replacement . . . .

Prepares cost estimates for budget preparation . . . .

Administers the building systems, . . . electrical, structural, and civil design contracts . . . . Reviews shop drawings, material samples and catalog cuts for compliance and recommends approval.

The proposed position would require an "ability to create and devise new ways of accomplishing objective[s]," a "thorough understanding of engineering methods and techniques," a "thorough knowledge of construction application, properties, operating and limitations of engineering systems, processes, . . . and materials," a "thorough knowledge of contacting management" and "procedures," and an "ability to make clear oral and written presentations."

DCOP approved DPAH's request to create the Modernization Coordinator positions and issued a "Priority Consideration Selection Certificate" on November 10, 1993. This Certificate listed three persons for priority consideration in filling the positions. Brummell's name was at the top of the list, meaning that he was entitled to be considered ahead of the other two candidates. In accordance with D.C. Personnel Regulations, the Certificate notified DPAH that it would be permitted to devi-ate from the priority ranking "only upon written justification by the selecting official that the duties of the position cannot be performed by the person with higher standing without undue interruption to the agency operation."[4]

On the very same day that the Priority Consideration Selection Certificate was issued, DPAH skipped over Brummell and chose the other two designated candidates to become Modernization Coordinators. Each of these two successful candidates had been born in Africa. One was thirty-seven and the other was forty-seven years old. Although he had priority over both of them, Brummell, who was sixty years old and born in the United States, was not even interviewed for the position. In violation of the conditions specified in the Certificate and D.C. Personnel Regulations, DPAH did not certify that Brummell could not perform the duties of the Modernization Coordinator position without undue interruption to agency operations. Instead, in its November 10, 1993 "Statement of Non–Selection" regarding Brummell, DPAH furnished the following explanation:

> Based on HUD mandates, DPAH must begin a relatively new concept in the entire construction contract process. For the past two years DPAH has failed in its efforts to successfully begin major renovation of public housing properties. Mr. Brummell and several other employees within his area of assignment were responsible for the review, analysis and correction to drawings and specifications for design and plans of structural renovation. The contracting process,

---

4. This instruction implemented Section 2434.7 of the D.C. Personnel Regulations, which stated: "A personnel authority may appoint a person not on the agency reemployment priority list or a person on the list with a lower standing than the others on the list only when it is necessary to obtain an employee for duties that cannot be taken over without undue interruption to the agency by the person with higher standing than the person appointed."

however, was entirely placed in the Office of Contracts and Procurement. The new thrust placed in the Modernization Coordinator position requires the knowledge and expertise to begin the process from preparing and issuing modernization contract documents, to contract award. Included in the process is the pre-award and post-award functions, price/cost analysis, negotiations and administration, which require extensive knowledge of federal, and local laws, regulations and procedures of modernization construction services. For these reasons and Mr. Brummell's limited experience in the awarding of construction contracts, we opted to non-select.

DPAH subsequently hired three more persons as Modernization Coordinators; the record before us does not disclose their national origins, ages, or other attributes.

## B. Adjudication by DHR of Brummell's Discrimination Complaint

On March 2, 1994, Brummell filed a complaint with DHR, alleging that DPAH had discriminated against him on the bases of his age and national origin. DPAH filed a Position Statement in response, repeating what it had said in its Statement of Non–Selection and asserting as an additional reason for not hiring Brummell that the United States Department of Housing and Urban Development ("HUD"), DPAH's funding agency, required applicants for Modernization Coordinator positions to have "specialized technical degrees in technical areas." Unlike Brummell, the two persons initially selected ahead of him each had a "Bachelor of Architecture" degree and "the requisite experience essential to the performance of the duties."

Further, DPAH stated, the decision to hire the three subsequent applicants instead of Brummell was "based solely on the ... HUD mandate that candidates for the positions meet the qualifications for the technical degree requirement." The parties submitted numerous relevant documents for consideration by DHR, such as DPAH's official description of the position of Construction Analyst, DPAH's requests to DCOP to establish the Modernization Coordinator positions (which included a proposed job description), the priority selection certificate issued by DCOP regarding the new position, DPAH's announcement of the creation of the new positions, employment applications completed by Brummell and other applicants, and DPAH documents announcing the selection of certain applicants and the non-selection of Brummell.

On May 10, 1996, the Director of DHR issued a Letter of Determination finding probable cause to believe that a violation of the D.C. Human Rights Act had occurred.[5] In determining that Brummell had established a *prima facie* case of discrimination based on national origin and age, the Director found that Brummell was in a protected class, that his performance as a government employee had been "exemplary" and well above expectations, and that the two candidates selected ahead of Brummell did not have better qualifications for the Modernization Coordinator position than he had. In finding that DPAH's proffered explanation appeared to be pretext for discrimination, the Director emphasized Brummell's twenty years of contracting experience in contrast to the limited experience of the two individuals chosen ahead of him, his hands-on knowl-

---

**5.** Under the Human Rights Act, it is "an unlawful discriminatory practice" to, *inter alia,* "fail or refuse to hire" an individual for reasons "wholly or partially ... based upon" national origin or age, among other personal characteristics. D.C.Code § 1–2512 (1981) (re-codified at § 2–1402.11 (2001)).

edge of government construction, his supervisors' praise of his "ability to learn far more skills than required to perform his duties," and his experience in teaching and training other DPAH employees. The Director discounted the belated assertion that the job of Modernization Coordinator required a technical college degree, pointing out that DPAH had not mentioned such an educational qualification in the original job description and supporting documents, in its request for permission to establish the new position, or—most tellingly—in the justification it was required to give to DCOP for not offering the position to Brummell.

Having found probable cause, the Director ordered DCHA (as DPAH's successor) and Brummell to attempt conciliation. After conciliation efforts failed, DHR notified Brummell that he could request either a formal hearing on his charges or a summary determination based on the existing record. Brummell requested the latter, and DCHA did not object. Thereafter, on September 16, 1997, the Director of DHR summarily determined that Brummell had successfully made out a *prima facie* case of discrimination on the bases of age and national origin and that DPAH's proffered explanation for not selecting Brummell was pretext for discrimination. The Director relied on essentially the same grounds that he had cited previously in his determination of probable cause. As the remedy, the Director ordered DCHA to reinstate Brummell to a position comparable to that of Painter Foreman (the position he held for six months between 1991 and 1992) and to accord him priority consideration for any promotions for which he qualified. The Director also awarded

Brummell back pay from November 12, 1993.

DCHA moved for reconsideration, asserting that the Director's decision was arbitrary and capricious because it failed to consider that Brummell "lacked the requisite knowledge of federal and local laws and regulations." [6] Neither DCHA nor Brummell requested an evidentiary hearing. On January 12, 1998, the Director reaffirmed his prior determination. Comparing Brummell again with the two candidates selected ahead of him, the Director concluded that Brummell was no less qualified than they were for the position of Modernization Coordinator. For instance, the Director noted, one chosen applicant's experience primarily involved the technical requirements of public housing construction, and he appeared to possess little knowledge of or experience with regulations relevant to the contracting process. The other selected candidate had previously held the same position as did Brummell, that of Construction Analyst, and his experience was essentially identical to that of Brummell. In short, contrary to DPAH's assertions, all three candidates possessed similar qualifications, and the two who were selected did not have a broader range of contracting experience than Brummell had. The Director also relied on his prior findings that the supposed requirement of a technical degree "was not a factor when the selections were made." Adhering to his determination that DCHA's proffered justifications were pretextual, the Director explained that because the stated reasons were not credible, they gave rise to an inference that the less-qualified applicants selected over Brummell were "treated more favorably

---

**6.** DCHA also argued that it could not be held liable for claims against DPAH, which had gone into receivership in 1995 and was no longer an agency of the District government. DCHA has not pursued this argument on appeal in this Court.

because of their younger ages and/or their national origin."

### C. Judicial Review

DCHA petitioned this Court in February 1998 to review the Director's decision. *See D.C. Hous. Auth., supra* note 2, 733 A.2d 338. The petition was opposed by both Brummell and the District government on the jurisdictional ground that administrative proceedings involving the selection or tenure of District employees are not subject to direct review by the Court of Appeals because they are not "contested cases" within the meaning of the D.C. Administrative Procedure Act. *See* D.C.Code §§ 1–1510(a) and 1–1502(8) (1981 & Supp. 1992), re-codified at D.C.Code §§ 2–510(a) and 2–502(8) (2001). On July 22, 1999, this court dismissed DCHA's petition for lack of jurisdiction, holding that the proper forum for initial judicial review of DHR's decision was in Superior Court. *D.C. Hous. Auth.*, 733 A.2d at 339, 342.

Thereafter, on August 23, 1999, DCHA (now joined by the District government) petitioned the Superior Court to review the DHR Director's final decision of January 12, 1998. Brummell intervened and moved to dismiss the petition for lack of jurisdiction on the grounds that (1) DCHA was not entitled to appeal an adverse decision under the D.C. Human Rights Act, inasmuch as government agencies are not within the class of persons that Act was intended to protect, and (2) DCHA's petition was untimely because it was not filed within thirty days of the Director's final decision. On August 7, 2000, the court (Judge Hedge) denied Brummell's motion. In line with our conclusion in *D.C. Housing Authority*, 733 A.2d 338, the court held

that DCHA, as a party to the proceedings, was entitled to appeal the adverse determination by the Director of DHR in the Superior Court. The court further held that DCHA's petition was timely under this court's decision in *Simpson v. District of Columbia Office of Human Rights*, 597 A.2d 392, 399 (D.C.1991), which had applied a three year statute of limitations to a complaining employee's analogous appeal of a "no probable cause" determination by the Office of Human Rights.

The trial court (Judge Braman) affirmed the DHR decision on the merits on March 11, 2002. The court found that DCHA's "*ex post facto* recourse to the purported (but unproven [7]) HUD mandate [requiring a technical degree] as a justification for rejecting Brummell was more than ample evidence impeaching the veracity of the reason originally proffered by it," which was sufficient for the Director of DHR to infer discriminatory intent. The court added that the record included significant additional evidence supporting the Director's determination: notably, DPAH's unexplained failure to certify as required that Brummell's selection would have resulted in "undue interruption to the agency's operation," and evidence that DPAH had not even interviewed Brummell for the Modernization Coordinator position before it rejected him.

### II.

■ Brummell contends that the Superior Court should have dismissed DCHA's review petition at the outset for want of jurisdiction. When this case was before us last, however, we held that DCHA had to file its petition for review in the Superior Court, not this Court. *D.C. Housing*

---

7. During oral argument, Judge Braman requested DCHA to produce the HUD mandate on which it relied. Eventually, on February 8, 2002, DCHA submitted an affidavit admit- ting that it was unable to find the supposed HUD directive. There is thus no documentary evidence in the record that such a directive ever existed.

*Auth.*, 733 A.2d at 342. We certainly assumed that the Superior Court would have jurisdiction to entertain DCHA's petition, and we see no merit in Brummell's contentions to the contrary. There is no question that the Superior Court would have had jurisdiction if Brummell had been the petitioner seeking review of an adverse decision of DHR instead of DCHA. It is a *non sequitur* for Brummell to argue that the Human Rights Act was not intended to protect government agencies. As the losing party before DHR, DCHA was entitled to judicial review simply because it was aggrieved by the administrative decision against it. "A strong presumption exists in favor of judicial reviewability which may be rebutted only by clear and convincing evidence of a contrary legislative intent." *Martin v. District of Columbia Courts*, 753 A.2d 987, 991 (D.C.2000) (internal quotations and citation omitted); *accord, Simpson*, 597 A.2d at 398. No such evidence is present here; this is not a situation in which "the legislature committed the challenged action entirely to official discretion, or where the legislature precluded judicial review, explicitly or implicitly, by statute." *Martin,* 753 A.2d at 991.[8]

Brummell likewise is mistaken in contending that DCHA's petition for review had to be filed within thirty days of the Director's final decision in order to be timely. In support of his position, Brummell cites both Agency Review Rule 1 of the Superior Court Civil Rules[9] and Rule 15(b) of this Court's Rules.[10] Neither Rule applies to a petition to review a decision of the DHR under the Human Rights Act. Agency Review Rule 1 is inapplicable because this is not an appeal permitted by the Comprehensive Merit Personnel Act, and Rule 15(b) does not apply in Superior Court. *See Simpson*, 597 A.2d at 399 & 399 n. 10. In *Simpson* we held that, where no court rule or statute specifies the time for filing a petition for review of an agency determination, the time for filing is governed by D.C.Code § 12–301(8), which

8. In fact, the regulations governing discrimination complaints against District government agencies, promulgated by the Mayor pursuant to D.C.Code § 2–1403.03 (2001 & Supp.2004), *see infra,* expressly contemplate judicial review at the behest of any party to the administrative proceeding. *See* D.C. Mun. Regs. tit. IV, § 114.7 ("The letter transmitting the final decision of the Director, EEO shall advise the *parties of their right* to request reconsideration or the reopening of the case ... or *to seek judicial review of the decision by a court of competent jurisdiction.*") (emphasis added); *id.* § 114.12 ("In the interests of justice, the Director, EEO may *sua sponte* reopen or reconsider any case in which the Director, EEO has issued a decision at any time prior to the filing of *an appeal by either party with a court of competent jurisdiction.*") (emphasis added).

9. Agency Review Rule 1 reads in pertinent part:

    Rule 1. Superior Court review of agency orders pursuant to D.C.Code 1981, Title 1, Chapter 6.

(a) *Time and manner of filing application.* Unless a different time is prescribed by statute an appeal to the Superior Court of the District of Columbia permitted by the [D.C. Government Comprehensive Merit Personnel Act of 1978, D.C.Code § 1–601.1 *et seq.*], shall be obtained by filing a petition for review with the Clerk of the Civil Division, within 30 days after service of formal notice of the final decision to be reviewed or within 30 days after the decision to be reviewed becomes a final decision under applicable statute or agency rules, whichever is later....

D.C. Sup.Ct. R. Civ. P. § XV, Rule 1 (2005).

10. Rule 15(b), which governs review of agency decisions in this court, provides in pertinent part that "[u]nless an applicable statute provides a different time frame, the petition for review must be filed within 30 days after notice is given, in conformance with the rules or regulations of the agency, of the order or decision sought to be reviewed...." D.C.App. R. 15(b) (2005).

provides a three-year limitations period for any action for which "a limitation is not otherwise specially prescribed." *Simpson,* 597 A.2d at 400.

Citing a proviso that the statute of limitations "does not apply ... to actions brought by the District of Columbia government," D.C.Code § 12–301 (2001), DCHA argues that it was not subject to any filing deadline at all. The proviso in question was added in 1986 to ensure that the statute of limitations does not prevent the District government from bringing suit to enforce public rights. *See District of Columbia Water & Sewer Auth. v. Delon Hampton & Assocs.,* 851 A.2d 410, 414 (D.C.2004); *District of Columbia v. Owens-Corning Fiberglas Corp.,* 572 A.2d 394, 397 (D.C.1989). While it is debatable whether the proviso applies to a case such as this one, we need not address it. DCHA petitioned for review in Superior Court within three years of DHR's final decision. Its petition therefore was timely whether or not § 12–301 applied to it.[11]

### III.

DCHA asserts that because Brummell did not pursue counseling in accordance with applicable regulations before filing his discrimination complaint, DHR was without authority to adjudicate the matter and its determination was a nullity. We con-

clude that DPAH and DCHA waived this claim by failing to raise it with DHR or even in the Superior Court. We reach the same conclusion as to DCHA's claim, which also is raised for the first time on appeal, that it was entitled to an evidentiary hearing on Brummell's complaint.

### A. Regulatory Framework

Chapter 1 of Title 4 of the District of Columbia Municipal Regulations ("Human Rights and Relations") governs complaints of discrimination in the District of Columbia government. D.C. Mun. Regs. tit. IV, § 100 *et seq.* (2005). The regulations first were promulgated in 1984, pursuant to D.C.Code § 1–2543 (1981) (re-codified at D.C.Code § 2–1403.03(a) (2001)), which grants the Mayor authority to "establish rules of procedure for the investigation, conciliation, and hearing of complaints filed against District government agencies, officials and employees alleging violations of [the Human Rights Act]."[12]

The regulations specify that each District government agency must designate one or more "EEO [Equal Employment Opportunity] Officers" and "EEO Counselors." D.C. Mun. Regs. tit. IV, § 104.1. A District government employee who believes he or she has been discriminated against on a prohibited basis (including national origin or age) "shall consult an

---

11. It is worth noting that complainants such as Brummell are not without protection against the danger that a government agency may withhold compliance with an Office of Human Rights award up to three years (or indefinitely) without filing a petition for review. If an employing agency fails to provide relief that is ordered by OHR, the employee may file an action in Superior Court for enforcement of his or her award without waiting for the agency to file a petition for review.

12. The D.C. Human Rights Act "provides alternative avenues of redress—administrative or judicial—for claims of unlawful discrimi-

nation." *Timus v. District of Columbia Dep't of Human Rights,* 633 A.2d 751, 753 (D.C. 1993) (internal quotations and citation omitted). The creation of an administrative venue to handle such claims was intended to afford a "less formal and expensive means of obtaining relief than through court proceedings." *Id.* Therefore, "unlike some other civil rights statutes, ... *see, e.g.,* 42 U.S.C. § 2000e–5 (f), [the D.C.] Human Rights Act does not authorize the complainant to bring suit on his or her own behalf if the agency declines or fails to do so." *Simpson,* 597 A.2d at 397. *See* D.C.Code § 2–1403.16 (Supp.2005).

EEO Counselor within [180] calendar days of the occurrence of the alleged unlawful practice or [180] days of his or her discovery of the occurrence, except that a complaint of sexual harassment may be filed directly with the Office [of Human Rights (or, formerly, DHR)]." *Id.* § 105.1. Upon notification by the complaining employee, the EEO Counselor is to inquire into the complaint, counsel the employee and seek an informal resolution of the matter. *Id.* § 105.2.

The EEO Counselor is enjoined to conduct a final interview with the complaining employee within twenty-one days of the date on which the employee brought the matter to his or her attention. *Id.* § 105.3. During the final interview, the Counselor shall advise the employee in writing of his or her right to file a formal complaint with OHR (or, formerly, DHR) within the following fifteen days if the matter has not been resolved to the complainant's satisfaction. *Id.* § 105.4. If the Counselor fails to complete the review and action within the prescribed time limits, the complainant is free to file a complaint with OHR (or DHR) (or, alternatively, in Superior Court, *see* D.C.Code § 2–1403.16) upon the expiration of twenty-one days after the matter was brought to the Counselor's attention. *Id.* § 105.7. If the EEO Counselor does conduct a timely final interview, the fifteen-calendar-days limit within which the employee may file a complaint must be observed, unless "good cause" prevents timely submission. *Id.* § 106.1–.2.

Upon the filing of a timely discrimination complaint, the Office (or DHR) investigates the claim to "determine whether reasonable cause exists to believe that a violation has occurred," "based on, and limited to, evidence obtained by the Office." *Id.* §§ 106.5, 107.1–.6, 108.4. To assist this investigation, the EEO Counselor at the employing agency is to provide a written report on his inquiry and recommendations. *Id.* § 105.2. If OHR (or DHR) makes a determination of "reasonable cause," the parties are encouraged to attempt "conciliation." *Id.* § 108.5. If they are unwilling or unable to settle, the complainant is afforded the opportunity to request either a summary determination or a formal hearing on his or her claim. *Id.* § 108.9.

If, as happened in this case, the complainant does not request a formal hearing, the Director of OHR (DHR) "may make a summary determination on the merits of a complaint based solely upon information in the complaint file." *Id.* § 109.1; *see also* § 109.9. The Director is authorized to dismiss the complaint or order remedial action, "including, but not limited to, hiring, reinstatement, promotion, rescission of adverse action, or award of compensatory credits which are authorized by existing personnel regulations and statutes." *Id.* § 109.2; *see also* § 109.3 (authorizing dismissal).[13] Where there has been no formal hearing, the Director's decision "shall be transmitted by letter" to the parties "stating the basis for the decision, including findings of fact, analysis, and conclusions of law." *Id.* § 114.6. Either party then has fifteen days within which to request reconsideration or reopening of the case. *Id.* §§ 109.5, 114.4, 114.7.[14] If the Director

---

**13.** Alternatively, if the Director determines that the matter is not appropriate for summary determination, a formal hearing may be held before an independent hearing examiner, with a subsequent decision by the Director to be based upon the hearing examiner's report. *Id.* § 109.7. The Director may adopt, reject, or modify the examiner's decision or may remand the matter for further hearings. *Id.* § 114.1.

**14.** "A request for reopening will only be considered if the requesting party demonstrates

denies the request, the decision previously issued becomes the final administrative action of the District government in the matter for all purposes, including judicial review. *Id.* §§ 114.10, 114.7.

### B. Brummell's Failure to Consult with an EEO Counselor

■ DCHA asserts that DHR should have dismissed Brummell's complaint because he did not consult first with an EEO Counselor at DPAH in accordance with the regulatory procedure outlined above. Its own failure to raise this argument before the agency or in Superior Court must be excused, DCHA argues, because Brummell's failure to seek counseling deprived DHR of "jurisdiction" over his complaint. We disagree; even if Brummell's procedural default would have required DHR to dismiss his complaint, had the point been raised, it did not implicate DHR's power to act on his complaint in the relevant sense. DCHA therefore has waived its right to object on the basis of Brummell's misstep.

■ "We have long held that we will not review a procedural claim that was not adequately raised at the agency level. Administrative and judicial efficiency require that all claims be first raised at the agency level to allow appropriate development and administrative response before judicial review.... Failing to object at a time when an error complained of on appeal could be corrected below is sufficient to work a forfeit of that claim on appeal." *Fair Care Found. v. District of Columbia Dep't of Ins. & Sec. Regulation,* 716 A.2d 987, 993 (D.C.1998) (internal citations and quotation marks omitted); *see also Goodman v. District of Columbia Rental Hous. Comm'n,*

573 A.2d 1293, 1301 (D.C.1990) ("In the absence of exceptional circumstances, a reviewing court will refuse to consider contentions not presented before the administrative agency at the appropriate time."); *Jones & Artis Constr. Co. v. District of Columbia Contract Appeals Bd.,* 549 A.2d 315, 324 (D.C.1988). "[S]imple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." *United States v. L.A. Tucker Truck Lines, Inc.,* 344 U.S. 33, 37, 73 S.Ct. 67, 97 L.Ed. 54 (1952). One principal reason for the rule that procedural objections must be timely made is to give the tribunal and opposing parties the opportunity to correct or controvert the purported defect when it is still possible to do so. *District of Columbia Gen. Hosp. v. District of Columbia Office of Employee Appeals,* 548 A.2d 70, 74 (D.C.1988). Another main reason is that "judicial review might be hindered by the failure of the litigant to allow the agency to make a factual record, exercise its discretion, or apply its expertise." *R.R. Yardmasters of Am. v. Harris,* 232 U.S.App. D.C. 171, 177, 721 F.2d 1332, 1338 (1983).

These reasons for applying the waiver rule are pertinent here. For one thing, it is at least possible that, if DCHA had made a timely request to DHR to dismiss Brummell's complaint on account of his failure to consult with an EEO Counselor, Brummell could have cured the problem by engaging in such consultation in a time-

---

that there is newly discovered evidence that is competent, relevant, and material and was not reasonably discovered prior to issuance of the final decision by the Director, EEO and that such evidence, if credited, would alter the ultimate outcome in the case." *Id.* § 114.5. The strictness of this rule is mitigated by § 114.12, which permits the Director to reopen or reconsider any case *sua sponte,* in the interests of justice. See note 8, *supra.*

ly fashion.[15]  Furthermore, although the requirement to consult with an EEO Counselor before filing a discrimination complaint is mandatory, that does not necessarily mean that DHR had no discretion to excuse Brummell's noncompliance for equitable reasons that Brummell might have been able to furnish on the record. Such discretion exists under analogous federal law and regulations. *See Bayer v. United States Dep't of the Treasury*, 294 U.S.App. D.C. 44, 46–47, 956 F.2d 330, 332–33 (1992) (holding that failure to consult an EEO Counselor within thirty days of alleged discriminatory act before filing employment discrimination complaint under Title VII of the Civil Rights Act of 1964 "is not jurisdictional" and can be excused for equitable reasons, such as employee's lack of knowledge of the requirement) (citing cases). We look to federal cases interpreting Title VII and its implementing regulations for guidance in our decisions under the D.C. Human Rights Act. *Blackman v. Visiting Nurses Ass'n*, 694 A.2d 865, 869 (D.C.1997). The issue under District of Columbia law is an open one, and in construing the regulation a reviewing court doubtless would benefit from receiving DHR's views on the matter on a full factual record. *Cathedral Park Condo. Comm. v. District of Columbia Zoning Comm'n*, 743 A.2d 1231, 1239 (D.C. 2000).

It is true, as DCHA argues, that a discretionary exception to the waiver rule exists where it is claimed that the agency "had no power to act at all." *R.R. Yardmasters*, 232 U.S.App. D.C. at 177, 721 F.2d at 1338 (exercising discretion to entertain, though ultimately rejecting, a newly-raised legal claim challenging the National Mediation Board's power to take any action while there were two vacancies on the three-member Board). This "absence of power to act" exception is a narrow one, however.[16]  *See, e.g., Jones & Artis*, 549 A.2d at 324 (holding that failure to make timely objection to lack of quorum for agency action amounted to a waiver of the objection on appeal). "While the language of *Yardmasters* might be construed to allow almost any defect in the jurisdiction of an agency to be raised for the first time on review, our later decisions construing *Yardmasters* have limited the exception to challenges that concern the very composition or 'constitution' of an agency." *Mitchell v. Christopher*, 302 U.S.App. D.C. 109, 112–13, 996 F.2d 375, 378–79 (1993) (rejecting as untimely a challenge to Grievance Board's jurisdiction to hear terminated employee's complaint and to recommend that employee be promoted retroactively). Put differently, this exception to waiver applies only where the challenge is

---

**15.** Brummell filed his complaint well within the 180–day period in which such consultation was required, *see* D.C. Mun. Regs. tit. IV, § 105.1. The record does not disclose when DCHA first received notice of the complaint or when DHR requested DCHA to respond to it. We cannot presume from a silent record that a timely motion to dismiss would have come too late for Brummell to cure his failure to seek counseling.

**16.** It should be emphasized, moreover, that even when the newly raised claim does challenge the very power of the agency to act, the decision to entertain the claim is still committed to the reviewing court's sound discretion.

*R.R. Yardmasters*, 232 U.S.App. D.C. at 177–78, 721 F.2d at 1338–39. In that case, the court deemed it appropriate as a discretionary matter to excuse the waiver because, *inter alia*, "[r]esolution of this issue does not require the development of a factual record, the application of agency expertise, or the exercise of administrative discretion. Thus, judicial review in the present case is not hindered by the failure of the appellee to raise its challenge before the Board." *Id.* (footnote omitted). As indicated above, we would find it difficult to make such a statement in the instant case.

to the agency's "inherent" capacity to act, *Jones & Artis*, 549 A.2d at 324, or where the challenged action is plausibly claimed to be "patently in excess of the agency's authority," *Washington Ass'n for Television & Children v. Fed. Commc'ns Comm'n*, 229 U.S.App. D.C. 363, 368, 712 F.2d 677, 682 (1983) (internal quotation marks, brackets and citation omitted). Otherwise, the general rule is that even "jurisdictional questions [must] be put to agencies before they are brought to [the reviewing court]." *Mitchell*, 302 U.S.App. D.C. at 113, 996 F.2d at 379.[17] *See, e.g.,Cmty. Hosps. of Cent. Cal. v. Nat'l Labor Relations Bd.*, 357 U.S.App. D.C. 361, 371, 335 F.3d 1079, 1089 (2003) (finding waived the argument that National Labor Relations Board should not have decided issue not factually related to allegations in unfair labor practice charge); *United Transp. Union v. Surface Transp. Bd.*, 325 U.S.App. D.C. 34, 37–38, 114 F.3d 1242, 1245–46 (1997) (finding waived the argument that Surface Transportation Board exceeded its authority in reviewing arbitration award).

The present case is comparable to *Mitchell*; it simply does not fall within the narrow *Yardmasters* category. It is indeed tempting to say, as the District of Columbia Circuit put it in *Bayer*, that while the requirement to consult an EEO Counselor may be a mandatory administrative remedies exhaustion requirement,

it "is not jurisdictional." 294 U.S.App. D.C. at 46, 956 F.2d at 332; *see Burton v. District of Columbia*, 835 A.2d 1076, 1079 (D.C.2003) (exhaustion doctrine is not a jurisdictional requirement and is thus subject to waiver, estoppel, and other mitigating factors). But the outcome here does not turn on labels—on whether DCHA "contests procedure, not jurisdiction," for example. *Jones & Artis*, 549 A.2d at 324. It is enough to say that DCHA does not challenge the "composition" or "constitution" of DHR, or DHR's "inherent" capacity to act, and that while it may be unclear whether DHR should have dismissed Brummell's complaint, its failure to do so was not "patently in excess of the agency's authority." We therefore see no sound reason to exercise our discretion to relieve DCHA of the consequences of its acquiescence in DHR's assumption of jurisdiction over Brummell's complaint.[18] *Cf. B.J.P. v. R.W.P.*, 637 A.2d 74, 78–80 (D.C.1994).

### C. DHR's Summary Determination Without an Evidentiary Hearing

■ The preceding discussion also disposes of DCHA's argument that the Director of DHR should not have decided Brummell's complaint without a full evidentiary hearing. When DCHA was before the DHR, it was content to have the case decided summarily. As DCHA did not request a hearing or object to the

---

17. "Our narrow reading of *Yardmasters* is, in part, based on our recognition that there are precious few cases involving interpretation of statutes authorizing agency action in which our review is not aided by the agency's statutory construction—even when the issue can be properly characterized as going to an agency's jurisdiction (which itself is often disputed)." *Id.*

18. We recognize that a reviewing court may have discretion to relieve a party of its waiver under other circumstances: notably, where the party had no opportunity to raise its claim

before the agency, in which case remand may be appropriate, and perhaps also (but rarely) where it truly and clearly would have been futile to raise the claim in the agency venue. *See Washington Ass'n for Television & Children*, 229 U.S.App. D.C. at 368, 712 F.2d at 682. No such circumstances are present here. Nor is this the exceptional case in which we are compelled to consider issues not raised before the agency in order to avoid "manifest injustice." *Goodman*, 573 A.2d at 1301 n. 21.

Director's decision to render a summary determination (as he was authorized to do by the applicable regulations), and as it failed even to seek reopening of the case when it moved for reconsideration, it forfeited its claim that a hearing was necessary. Acquiescence is waiver, and nothing in this case justifies a deviation from that general rule.

## IV.

DCHA's final claim is that the Director's finding of discrimination was not supported by substantial evidence in the record.[19] The Superior Court (Judge Braman) rejected this claim, and we do likewise for essentially the same reasons.

■■■ In evaluating claims of discrimination under the D.C. Human Rights Act, we use the same three-part, burden-shifting test adopted by the Supreme Court for discrimination claims under Title VII of the Civil Rights Act of 1964. *See Hollins v. Fed. Nat'l Mortgage Ass'n,* 760 A.2d 563, 571 (D.C.2000); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). First, the complaining employee must make a *prima facie* showing of unlawful discrimination by a preponderance of the evidence. "The *prima facie* showing, when made, raises a rebuttable presumption that the employer's conduct amounted to unlawful discrimination." *Hollins,* 760 A.2d at 571. An employee makes a *prima facie* showing by presenting evidence:

(i) that he belongs to a [protected class];
(ii) that he applied and was qualified for a job for which the employer was seek-

ing applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. 1817. If the employee makes a *prima facie* showing of discrimination, "the burden shifts to the employer to rebut it by articulating 'some legitimate, nondiscriminatory reason for the employment action.'" *Hollins,* 760 A.2d at 571 (citations omitted). "The employer can 'satisfy its burden by producing admissible evidence from which the trier of fact [can] rationally conclude that the employment action [was not] motivated by discriminatory animus.'" *Id.* (citation omitted). If the employer sufficiently articulates a legitimate, nondiscriminatory reason, the employee then bears the ultimate burden of proving by a preponderance of the evidence, and without the benefit of the first stage presumption, that the employer's stated justification for its action was merely a pretext for unlawful discrimination. *Id.*

■■■ In the case at bar, DCHA argues that the record does not support the Director's finding that Brummell was qualified for the Modernization Coordinator position—an essential element of his *prima facie* case. However, there was substantial evidence in the record that Brummell was qualified. He had worked as a Construction Analyst for DPAH for over four years, and the listed duties and qualifications for that job were very similar to those of Modernization Coordinator at the

---

**19.** Although this case comes to us as an appeal from the Superior Court's decision affirming DHR's determination, our review proceeds "in the same manner as if the ruling came to us directly from the agency." *Pitt v. District of Columbia Dep't of Corr.,* 819 A.2d 955, 958 (D.C.2003) (citing *Hahn v. Univ. of*

*the Dist. of Columbia,* 789 A.2d 1252, 1256 (D.C.2002)). Like the Superior Court, therefore, we are bound by the Director's findings of fact so long as they are supported by substantial evidence in the record. *See Kegley v. District of Columbia,* 440 A.2d 1013, 1018–19 (D.C.1982).

time Brummell was considered for the position. Both positions basically entailed overseeing the contract process for construction projects, with the caveat that a Modernization Coordinator had to possess the ability to conform projects to HUD requirements. During Brummell's lengthy tenure at DPAH, much of his work involved construction contracting, and he received excellent performance ratings and supervisory appraisals. His personnel file reflected approximately twenty years of construction experience at various levels and in various areas of responsibility. Moreover, the Director could find that Brummell's qualifications and experience were not materially different from those of the two applicants who were selected ahead of him. DCHA primarily points to Brummell's lack of a technical degree, but on the record before him, the Director properly could find that such a degree was not required for the Modernization Coordinator position when Brummell was denied it. Thus we reject DCHA's contention that Brummell failed to make a *prima facie* showing of unlawful discrimination.

DCHA also argues that the Director could not properly find that DPAH's asserted nondiscriminatory reasons for its decision were pretext for discrimination. Specifically, DCHA argues that neither the assertions of different rationales at different stages of the proceedings nor the apparent violations of controlling personnel rules should have been considered evidence of pretext. Further, DCHA disagrees that the explanations were in fact inconsistent with each other.

In our view, however, DCHA is merely rearguing the weight to be accorded the evidence, when the record amply supports the Director's disbelief of DPAH's proffered reasons for not selecting Brummell. DPAH's initial Statement of Non–Selection was (to put it charitably) less than clear;

as we read it, the only reason it actually offered for not choosing Brummell was its conclusory allusion to his allegedly "limited experience in the awarding of construction contracts." In weighing this Statement, it is significant that DPAH failed to certify as required that Brummell could not perform the duties of the Modernization Coordinator position without causing undue interruption to the agency operation. A fair inference from that glaring omission alone is that Brummell could have performed the duties of the position satisfactorily. The Director also was entitled to discount DPAH's belated and never substantiated assertion, seemingly made solely for litigation purposes, that HUD required Modernization Coordinators to have "technical" degrees—a requirement that was unrelated to the criterion of experience in the awarding of construction contracts on which DPAH previously had relied. As the Director noted, this supposed educational requirement was not specified as a "Selective Placement Factor" in DPAH's original request to DCOP to authorize the new position, it was not mentioned in the original job description or supporting documents, and it was not cited in DPAH's required justification for not selecting Brummell. The purported HUD mandate that allegedly contained the technical degree requirement was never even produced (and could not even be found). In view of these facts, we think the Director reasonably could view DPAH's invocation of the technical degree requirement with skepticism and conclude that DPAH's shifting and unsupported explanations were not credible.

■ The Director therefore could find that Brummell proved by a preponderance of the evidence that DPAH's explanations were "pretext for discrimination." To meet his burden, Brummell was not required to present direct proof of intention-

al discrimination or demonstrate that the employment decision had a disparate impact on members of his protected class. "[A] plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). To be sure, a trier of fact may not find "pretext for discrimination" on a record which "conclusively revealed some other, nondiscriminatory reason for the employer's decision," or if there existed "only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Id.* But as the evidence we have summarized shows, that is not this case. Under *Reeves*, the Director's well-grounded conclusion that DPAH's stated reasons were false is sufficient to find that they were pretext for discrimination. We hold that there was sufficient evidence in the record to support the Director's determination.

## V.

In summary, we conclude that DCHA's petition for review of DHR's decision was timely and within the jurisdiction of the Superior Court. We thus affirm Judge Hedge's denial of Brummell's motion to dismiss the petition. We also affirm Judge Braman's decision to deny the petition and uphold DHR's determination that DPAH violated the D.C. Human Rights Act by discriminating against Brummell on the bases of national origin and/or age when it refused to select him for a Modernization Coordinator position. We hold that DCHA forfeited its claim that DHR should have dismissed Brummell's complaint on account of his failure to consult with an EEO Counselor, as well as its claim that DHR should have conducted an evidentiary hearing, by not asserting those claims when it was before DHR. We further hold that there was sufficient evidence in the administrative record to support the Director's findings of discrimination, even though DHR did not conduct an evidentiary hearing. The judgment of the Superior Court is hereby

*Affirmed.*